[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bates*, Slip Opinion No. 2022-Ohio-475.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-475

THE STATE OF OHIO, APPELLEE, *v*. BATES, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bates*, Slip Opinion No. 2022-Ohio-475.]

*Criminal law—Postrelease control—A collateral attack on the trial court's imposition of postrelease control in the sentence must be brought on direct appeal or it will be barred by res judicata—Court of appeals' judgment reversed and trial-court order vacated in part.*

(No. 2020-0255—Submitted March 3, 2021—Decided February 22, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 107868, 2020-Ohio-267.

————————————

**O'CONNOR, C.J.**

**{¶ 1}** In this appeal, we consider the application of our recent decisions in *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, and *State v. Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, 161 N.E.3d 608.  In 2008, the trial court failed to include in appellant Robert Bates's sentencing entry a statement that postrelease control was mandatory and that a violation of postrelease control

would subject him to the consequences set forth in R.C. 2967.28. Ten years later, in 2018, the state brought this error to the trial court's attention and the court issued a new sentencing entry that included the required notification as to the postrelease-control portion of Bates's sentence. Based on this court's previous void-sentence jurisprudence, the Eighth District Court of Appeals affirmed the trial court's 2018 judgment. Subsequent to our acceptance of this appeal, we decided *Harper*, which overruled the void-sentence jurisprudence on which the court of appeals here relied. *See id*. at ¶ 5, 40. For the following reasons, we reverse the Eighth District's judgment and vacate the portion of the 2018 sentencing entry imposing postrelease control.

## I. Relevant Background

{¶ 2} In October 2008, the Cuyahoga County Court of Common Pleas sentenced Bates to a nine-year prison term for his convictions of kidnapping, rape, and robbery. The trial court held a sentencing hearing; however, the transcript of the hearing was not made part of the record in this appeal. According to Bates, the trial court failed to advise him at the sentencing hearing of the consequences of violating postrelease control. A few days later, the court journalized its sentencing entry. The portion of the entry concerning postrelease control stated: "Post release control is part of this prison sentence for 5 years for the above felony(s) under R.C. 2967.28."

{¶ 3} Bates filed a direct appeal challenging his convictions. Neither Bates nor the state challenged the postrelease-control portion of his sentence on appeal. *State v. Bates*, 8th Dist. Cuyahoga No. 92323, 2009-Ohio-5819. The Eighth District affirmed Bates's convictions. *Id*. at ¶ 1. We declined discretionary review. *State v. Bates*, 124 Ohio St.3d 1509, 2010-Ohio-799, 922 N.E.2d 971.

{¶ 4} In October 2018, ten years after Bates's original sentencing, the trial court held a classification hearing on Bates's sexual-predator status. At this hearing, the prosecutor raised an issue concerning the trial court's 2008 imposition

2

of postrelease control. The prosecutor explained that he had reviewed the sentencing entry and discovered that the trial court had failed to include in that entry notification of the mandatory nature of postrelease control and notification of the consequences for violating postrelease control. Based on this court's decision in *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, *overruled on other grounds*, *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, the prosecutor believed that the court needed to inform Bates of these aspects of postrelease control before his release from prison. Over objection, the court proceeded to advise Bates of his postrelease-control obligations and the consequences of violating postrelease control.

{¶ 5} A few days later, the trial court journalized this information in a new sentencing entry. Specifically, it noted that Bates's sentence included mandatory three- and five-year terms of postrelease control and that if Bates violated his supervision or a condition of postrelease control, the parole board could impose a prison term, as part of his sentence, of up to one-half of the original prison sentence imposed. Bates appealed this entry to the Eighth District.[1]

{¶ 6} On appeal, Bates challenged the postrelease-control portion of the trial court's 2018 sentencing entry. The Eighth District affirmed the sentence. 2020-Ohio-267. Relying on *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, and *Grimes*, the court of appeals concluded that the trial court's 2008 sentencing entry did not validly impose postrelease control, because it failed to indicate that postrelease control was mandatory and it did not incorporate a statement that the Adult Parole Authority ("APA") would administer postrelease control, pursuant to R.C. 2967.28, and that any violation of postrelease control would subject Bates to additional consequences set forth in that statute. *Id*. at ¶ 20-

---

1. For reasons not relevant to this appeal, the Eighth District twice remanded the matter to the trial court for it to issue a new final judgment. Both of the trial court's subsequent entries contained language regarding postrelease control identical to that in the October 2018 sentencing entry.

¶ 21. The Eighth District therefore concluded that the postrelease-control portion of Bates's sentence, as imposed in 2008, was void. *Id*. at ¶ 21. But, because Bates had not served his entire prison sentence at that point, the court of appeals also held that "the trial court was permitted to correct the previously defective postrelease control sanction" when it notified Bates of postrelease control at the 2018 hearing and issued the corresponding entry. *Id*. at ¶ 26.

{¶ 7} We accepted Bates's discretionary appeal to address the following proposition of law: "The failure to include a sentence of post-release control when imposing a prison sentence must be corrected on direct appeal and failure to do so precludes supervision on [postrelease control] at the end of the prison sentence." *See* 158 Ohio St.3d 1450, 2020-Ohio-1090, 141 N.E.3d 976.

## II. Analysis

{¶ 8} Bates's proposition of law is two-fold. First, Bates argues that the trial court failed to properly impose postrelease control in 2008, rendering that portion of his sentence voidable and subject to the doctrine of res judicata. He asserts that res judicata precluded the trial court from correcting his sentence in 2018. Second, Bates contends that because the court failed to properly impose the postrelease-control portion of his sentence in 2008, his original sentence never included postrelease control and that this precluded the state from imposing postrelease-control supervision at the end of his prison sentence.

{¶ 9} Our recent decisions in *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, and *Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, 161 N.E.3d 608, resolve the first issue. However, we cannot reach the second issue today based on the facts and arguments before us.

### A. *Legal background*

{¶ 10} R.C. 2967.28(B) requires that prison sentences for certain felonies include a mandatory term of postrelease control to be imposed by the parole board after the offender is released from imprisonment. R.C. 2967.28(B) and (C) identify

the length of the term of postrelease-control supervision for each degree of felony. At the sentencing hearing, the court must notify the offender of this mandatory supervision under R.C. 2967.28(B). Former R.C. 2929.19(B)(3)(c).[2] The court also must notify the offender at the sentencing hearing that if he or she "violates that supervision or a condition of post-release control * * *, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed upon the offender." Former R.C. 2929.19(B)(3)(e).

{¶ 11} It is established that "a trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing." *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 23, *overruled on other grounds*, *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248. The trial court must advise the offender at the sentencing hearing of the term of supervision, whether postrelease control is discretionary or mandatory, and the consequences of violating postrelease control. *See Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, at ¶ 11. Among other consequences, an offender's violation of a postrelease-control sanction or condition may result in the APA imposing a prison term on the offender. R.C. 2967.28(F)(3). However, the maximum cumulative prison term for all violations under R.C. 2967.28(F)(3) "shall not exceed one-half" of the stated prison term originally imposed. *Id*.

{¶ 12} In *Grimes*, we explained that once the court orally provides all the required advisements at the sentencing hearing, it must then incorporate those advisements into the sentencing entry. *Id*. at ¶ 8, citing *Jordan* at ¶ 17. Thus, we held that to validly impose postrelease control when the court provides all the required advisements at the sentencing hearing, the sentencing entry must include:

---

2. The General Assembly has renumbered R.C. 2929.19(B) several times since Bates was sentenced in 2008. Former R.C. 2929.19(B)(3)(c) and (e), as in effect on the date of Bates's sentencing hearing, are now R.C. 2929.19(B)(2)(d) and (f). 2018 Am.Sub.S.B. No. 201, Section 1. There has been no substantive change in the wording of the statutes.

(1) whether postrelease control is discretionary or mandatory, (2) the duration of the postrelease-control period, and (3) a statement to the effect that the [APA] will administer the postrelease control pursuant to R.C. 2967.28 and that any violation by the offender of the conditions of postrelease control will subject the offender to the consequences set forth in that statute.

*Id*. at ¶ 1. Prior to this court's decision in *Harper*, a trial court's failure to validly impose postrelease control rendered the postrelease-control portion of the sentence void and subject to correction at any time before the offender's release from prison. *See generally Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864.

{¶ 13} We recently overruled this void-sentence jurisprudence. *Harper* at ¶ 5, 40-41. In *Harper*, the court held that "[w]hen a case is within a court's subject-matter jurisdiction and the accused is properly before the court, any error in the exercise of that jurisdiction in imposing postrelease control renders the court's judgment voidable." *Id.* at ¶ 4. The court cautioned that this holding would apply to both the state and the defendant. *Id*. at ¶ 43. The court then concluded that because the trial court had subject-matter jurisdiction over the case and personal jurisdiction over Harper, the trial court's failure to include notice of the consequences of violating postrelease control in the sentencing entry, as required by *Grimes*, rendered Harper's sentence voidable, not void, and therefore subject to the doctrine of res judicata. *Id*. at ¶ 41.

{¶ 14} Similar to *Harper*, in *Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, 161 N.E.3d 608, the trial court failed to include notice of the consequences of violating postrelease control in the sentencing entry. *Hudson* at ¶ 3. The court concluded that because the trial court had jurisdiction over both the case and Hudson, any error in imposing postrelease control rendered the sentence voidable; thus, res judicata barred Hudson's collateral attack on his sentence. *Id*. at ¶ 16.

### B. *The 2018 sentencing entry is of no effect and the onus was on the state to file a direct appeal*

{¶ 15} As a preliminary matter, we reject the state's request to dismiss this appeal as improvidently allowed. The state asserts that Bates has abandoned the issue raised below—i.e., his challenge to the trial court's 2018 correction of his 2008 sentence—and now for the first time challenges the trial court's imposition of postrelease control at the 2008 sentencing hearing. We disagree.

{¶ 16} In the court of appeals, Bates argued that "the trial court's failure to properly impose postrelease control rendered the postrelease control sanction voidable, not void, and that the trial court erred by correcting the defective imposition of postrelease control in 2018." 2020-Ohio-267 at ¶ 1. Accordingly, Bates certainly preserved his challenge to the trial court's 2008 sentencing entry. Moreover, at the time Bates appealed the 2018 sentencing entry, this court had not yet decided *Harper*. Consequently, Bates's argument that the trial court's errors in imposing postrelease control in 2008 now preclude his supervision on postrelease control did not become an issue until his appeal reached this court.

{¶ 17} Bates and the state agree that under *Harper* and *Hudson*, any error in the trial court's 2008 imposition of postrelease control rendered that portion of the sentence voidable, not void, and therefore res judicata barred the court from correcting the sentence in 2018. The parties, however, disagree regarding whose burden it was in this case to raise the postrelease-control errors on direct appeal.

{¶ 18} Neither Bates nor the state challenged the trial court's 2008 imposition of postrelease control on direct appeal. *See Bates*, 8th Dist. Cuyahoga No. 92323, 2009-Ohio-5819. Bates contends that the burden was on the state to appeal this issue. More specifically, Bates asserts that because the trial court failed to notify him at the 2008 sentencing hearing of the consequences of violating postrelease control, postrelease control was never imposed as part of his original sentence. Thus, Bates argues, the fact that postrelease control was not part of his

sentence benefits him and hinders the state's desire to have him under postrelease-control supervision.

{¶ 19} The state, on the other hand, maintains that Bates bore this responsibility. The state does not disagree that errors occurred in the trial court's 2008 imposition of postrelease control. But it believes that the burden is on the defendant to raise these errors "at the earliest possible time." Amicus curiae, Attorney General of Ohio, agrees with the state. Specifically, the attorney general argues that "[t]he party aggrieved by a trial court's error is the party that bears responsibility for appealing and correcting the mistake" and that here, the aggrieved party was Bates.

{¶ 20} "It is fundamental that appeal lies only on behalf of a party aggrieved," *Ohio Contract Carriers Assn. v. Pub. Util. Comm.*, 140 Ohio St. 160, 161, 42 N.E.2d 758 (1942), and for the purpose of "correct[ing] errors injuriously affecting the appellant," *id.* at syllabus. *See also State ex rel. Gabriel v. Youngstown*, 75 Ohio St.3d 618, 619, 665 N.E.2d 209 (1996). Accordingly, it follows that the party that benefits from an error cannot be the party aggrieved. *See Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 33 (noting that the appellant was not the proper party to assert an issue in its appeal "since it was benefited, not aggrieved, by that error"), citing *Ohio Contract Carriers Assn.* at syllabus.

{¶ 21} At its core, postrelease control is a sanction; it is an additional term of supervision after an offender's release from prison that imposes certain restrictions on the offender and, if violated, it allows the APA to impose conditions and consequences, including prison time, upon the offender. *See* R.C. 2967.01(N). Postrelease control is "aimed at behavior modification in the attempt to reintegrate the offender safely into the community." *Woods v. Telb*, 89 Ohio St.3d 504, 512, 733 N.E.2d 1103 (2000); *see also State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 16. In essence, postrelease control is a continued restraint

8

on an offender's liberty after he or she serves the initial prison sentence. *See Watkins v. Collins*, 111 Ohio St.3d 425, 2006-Ohio-5082, 857 N.E.2d 78, ¶ 52; *see also Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 31, *superseded by statute as stated in State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958. The trial court's errors in imposing the postrelease-control portion of the sentence were to Bates's benefit; without postrelease control properly imposed, his liberty would not be restrained after he served his prison sentence and he would not be under the obligations associated with supervision. The court's errors therefore "injuriously affect[ed]" the state and its interest in regulating Bates's conduct so that he could be reintegrated safely back into society. *Ohio Contract Carriers Assn.* at syllabus; *see Woods* at 512.

**{¶ 22}** Res judicata does not occur in a vacuum. The party aggrieved by a court's error in imposing postrelease control must challenge it on direct appeal; otherwise, the sentence will be subject to res judicata. Here, the trial court's errors in imposing postrelease control favored Bates; the state, as the aggrieved party, should have appealed the 2008 entry to correct them. *See State ex rel. Fraley v. Ohio Dept. of Rehab. & Corr.*, 161 Ohio St.3d 209, 2020-Ohio-4410, 161 N.E.3d 646, ¶ 17.

**{¶ 23}** The second dissenting opinion states that because the statutory scheme "allows postrelease control to be imposed on Bates," dissenting opinion of DeWine, J., ¶ 72, he is the aggrieved party. But, as explained above, to validly impose postrelease control as part of a defendant's sentence, the trial court must orally provide all the required advisements at the sentencing hearing and it must incorporate those advisements into the sentencing entry. *See Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, at ¶ 8. Thus, regardless of R.C. 2929.191 or the so-called "harmless error" language in former R.C. 2929.19(B)(3) upon which the second dissenting opinion relies, the trial court here provided deficient notice in 2008 and therefore did not validly impose postrelease control on

Bates. Because the trial court failed to validly impose postrelease control in 2008—a decision that benefited, not aggrieved, Bates—the state should have filed a direct appeal. To say otherwise would be to advocate that Bates, after receiving deficient notice, should have filed a direct appeal alerting the appellate court that his postrelease control was not validly imposed as part of his sentence and requesting that it correct said errors in order to ensure that he receive a postrelease-control sanction and additional restraint on his liberty. We find this to be a ridiculous suggestion. Further, as discussed more below, the statutes upon which the second dissent relies are unhelpful in resolving the issues before us, because R.C. 2929.191 is not applicable here and because we cannot determine the effect of former R.C. 2929.19(B)(3)'s language based on the facts and arguments before us.

{¶ 24} This court made clear in *Harper*, and again in *Hudson*, that prosecuting attorneys and defense counsel throughout Ohio are "now on notice that any claim that the trial court has failed to properly impose postrelease control in the sentence must be brought on appeal from the judgment of conviction or the sentence will be subject to res judicata." *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, at ¶ 43; *Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, 161 N.E.3d 608, at ¶ 18. Unlike in *Harper* and *Hudson*, the state is the party here that raised the claim that the trial court failed to properly impose postrelease control in the 2008 sentence and requested that the court advise Bates of postrelease-control obligations and the consequences for violating postrelease control and correct the judgment entry. Thus, contrary to the second dissenting opinion's notions, it is fully in line with *Harper* and *Hudson* for the doctrine of res judicata to apply against the state here for its failure to file a direct appeal from the 2008 sentencing entry.

{¶ 25} The state had "a full and fair opportunity" to challenge the trial court's errors in imposing postrelease control on direct appeal. *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 40. But it failed to do so. In fact, it did not seek to correct the errors for ten years. Because res judicata bars

collateral attack on Bates's sentence, the trial court's 2018 sentencing entry was improper and, therefore, of no effect. We therefore vacate the trial court's 2018 sentencing entry to the extent that it attempted to impose postrelease control upon Bates.

## C. *We cannot reach the effect of the trial court's improper 2008 imposition of postrelease control on the APA's ability to supervise Bates*

{¶ 26} With the 2018 sentencing entry of no consequence, Bates also requests that this court hold that the trial court's errors in imposing postrelease control in 2008 now disqualify him from any postrelease-control supervision. More specifically, Bates asserts that because the trial court failed to advise him at the 2008 sentencing hearing of the consequences of violating postrelease control, the court did not impose postrelease control as part of his original sentence and the APA therefore lacks the power to supervise him.

{¶ 27} There is no dispute that the trial court's imposition of postrelease control in 2008 was improper. Bates asserts, and the state does not dispute, that the trial court failed to provide notice of the consequences of violating postrelease control at the 2008 sentencing hearing. Accordingly, the record before us does not establish that the trial court satisfied its statutory duty under former R.C. 2929.19(B)(3)(e) to notify Bates that the APA may impose a prison term for violations of postrelease control. Moreover, the 2008 sentencing entry does not include two of the necessary advisements under *Grimes*—i.e., that Bates's postrelease control was mandatory and that violating it would subject him to the consequences set forth in R.C. 2967.28. We cannot reach the effect of the trial court's improper 2008 imposition of postrelease control on the APA's ability to supervise Bates today, however, because we do not have the facts or arguments before us with which to resolve the issue.

{¶ 28} We take judicial notice that Bates has been released from prison on the charges relevant to this appeal and was convicted and sentenced on new felony

offenses in 2019. *See* https://appgateway.drc.ohio.gov/OffenderSearch/Search /Details/A764729 (accessed Sept. 27, 2021) [https://perma.cc/T97H-WXLZ]. Nevertheless, there are no facts before us that Bates has been subject to any consequences for postrelease-control violations. Nor do we know whether Bates's postrelease control was unfavorably terminated by his 2019 convictions. For instance, we do not know whether the trial court imposed a judicial sanction pursuant to R.C. 2929.141, converting the remainder of the postrelease-control term into prison time and thereby terminating the period of postrelease control for the earlier 2008 felony. *See* R.C. 2929.141(A)(1).

{¶ 29} Bates also does not provide developed arguments permitting us to reach this issue. Former R.C. 2929.19(B)(3)(c) and (e) each include similar language regarding the effect of trial-court errors on an offender's postrelease control. This language explains that errors in postrelease-control notice—i.e., a trial court's failure to notify the offender at the sentencing hearing or in the judgment entry that the offender "will be supervised" on postrelease control or that the APA may impose a prison term for violating it—do not "negate, limit, or otherwise affect" the mandatory period of supervision, *see* former R.C. 2929.19(B)(3)(c), nor the authority of the parole board to impose a prison term for a violation if "the parole board notifies the offender prior to the offender's release of the board's authority to so impose a prison term," *see* former R.C. 2929.19(B)(3)(e). Here, we cannot determine the effect of this statute because we do not know whether the *parole board* notified Bates prior to his release of its ability to impose a prison term for a violation of postrelease control. Additionally, no developed constitutional challenges to this language in former R.C. 2929.19(B)(3)(c) and (e) are before us. Nor does the state rely upon this language in its request for dismissal.

{¶ 30} Similarly, R.C. 2929.191 does not provide a resolution in this case, contrary to the second dissenting opinion's suggestions. It is true that R.C.

2929.191 provides a procedure to correct a court's failure to validly impose postrelease control. But the trial court "shall not issue the correction until after the court has conducted a hearing in accordance with [that] division." R.C. 2929.191(C); *Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, at ¶ 24 ("R.C. 2929.191(C) prescribes the type of hearing that must occur to make such a correction to a judgment entry"). A requirement of R.C. 2929.191(C) is that before the court holds such a hearing, "the court shall provide notice of the date, time, place, and purpose of the hearing to" the offender, the prosecuting attorney, *and* the department of rehabilitation and correction. No such notice occurred in this case, as the prosecutor brought the postrelease-control errors to the trial court's attention in the middle of Bates's sexual-predator-classification hearing.

{¶ 31} Accordingly, we decline to address the effect of the trial court's improper 2008 imposition of postrelease control on the APA's ability to supervise Bates based on the facts and arguments before us. *See State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 51 ("declining to address a legal issue not squarely before us is consistent with our reluctance to issue advisory opinions [and] the principle of judicial restraint").

### III. Conclusion

{¶ 32} Our decision today is aligned with *Harper* and *Hudson*. A collateral attack on the trial court's imposition of postrelease control in the sentence must be brought on direct appeal or it will be barred by res judicata. *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, at ¶ 42; *Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, 161 N.E.3d 608, at ¶ 17. This holding applies to the state as well as the defendant. *See Harper* at ¶ 43; *Hudson* at ¶ 18. Because res judicata precluded the collateral attack on Bates's sentence, the trial court's 2018 sentencing entry was improper and, therefore, of no effect. We accordingly reverse the Eighth District's decision to the extent it holds otherwise, and we vacate the portion of the 2018 sentencing entry imposing postrelease control upon Bates.

Judgment reversed

and trial-court order vacated in part.

DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., dissents, with an opinion.

DEWINE, J., dissents, with an opinion joined by FISCHER, J., except for paragraphs 64 and 65 and basis No. 3 in paragraph 66.

———————————

**KENNEDY, J., dissenting.**

**{¶ 33}** R.C. 2929.19 requires a trial court to give a defendant notice at the sentencing hearing of the details of postrelease control and the consequences for violating it. The statute does not require courts to incorporate that notice into the sentencing entry, but our caselaw does. *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 1, 15, *overruled on other grounds*, *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248. In this case, the trial court's 2008 sentencing entry did not include all the notices required by the statute. However, a court that properly notifies the defendant of postrelease control at the sentencing hearing without incorporating that notice into the sentencing entry has authority to correct the entry to reflect the notice that was given. *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 15. Appellant, Robert Bates, did not provide the court with the sentencing-hearing transcript. There is no record to prove that the trial court did not provide all the required notices at the original sentencing hearing. Therefore, we are obliged to presume regularity in that proceeding, *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, ¶ 14, hold that the trial court had the authority to correct the omission of the required notices in the sentencing entry, and affirm the judgment of the court of appeals. Because the majority does not, I dissent.

{¶ 34} When pronouncing a sentence that includes a term of postrelease control, the trial court is required to notify the defendant whether postrelease supervision by the Adult Parole Authority ("APA") is mandatory or discretionary as well as the duration of the term of postrelease control. *See* R.C. 2929.19(B)(2)(d). The court is also required to give oral notice of the consequences of a violation, i.e., "the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed upon the offender." Former R.C. 2929.19(B)(3)(e). R.C. 2929.19 does not require all those notices to be incorporated into the sentencing entry. However, we have explained that "[a] sentencing entry's silence on postrelease control * * * is impermissible because it is the sentencing entry that 'empowers the executive branch of government to exercise its discretion.' " *Grimes* at ¶ 15, quoting *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 22. We have therefore held that to properly impose postrelease control, the sentencing entry must incorporate the oral notice provided at the sentencing hearing, including "(1) whether postrelease control is discretionary or mandatory, (2) the duration of the postrelease-control period, and (3) a statement to the effect that the [APA] will administer the postrelease control pursuant to R.C. 2967.28 and that any violation by the offender of the conditions of postrelease control will subject the offender to the consequences set forth in that statute." *Grimes* at ¶ 1.

{¶ 35} The trial court's original sentencing entry was not silent on postrelease control but provided only: "Post release control is part of this prison sentence for 5 years for the above felony(s) under R.C. 2967.28." Neither Bates nor the state challenged the imposition of postrelease control on direct appeal. *State v. Bates*, 8th Dist. Cuyahoga No. 92323, 2009-Ohio-5819. And it is not disputed that the trial court informed Bates that postrelease control was mandatory.

{¶ 36} Ten years later, the prosecutor asked the trial court to correct Bates's sentencing entry before his release from prison because the entry lacked notice that

postrelease control was mandatory and did not state the consequences for violating it, as required by *Grimes*. The trial court journalized a new entry stating that Bates's sentence included mandatory postrelease control. It notified Bates that if he violated a condition of postrelease control, the parole board could impose a prison term of up to one-half of the original prison sentence imposed.

**{¶ 37}** On Bates's appeal, the Eighth District Court of Appeals affirmed, concluding that the error in imposing postrelease control rendered that sanction void and correctable prior to Bates's release from prison. It noted that the transcript of the 2008 sentencing hearing was not in the record, and it therefore presumed that the trial court properly imposed postrelease control at the 2008 sentencing hearing.

**{¶ 38}** It is important to clarify the question currently before us. We are not reviewing the validity of the trial court's imposition of postrelease control in 2008. For this reason, it is not necessary to decide which party was aggrieved by the sentence imposed in 2008 and therefore required to appeal it. Instead, we are reviewing only whether the trial court had authority to correct the sentencing entry in 2018, resulting in the order that was appealed to the court of appeals and now to this court. As the appellant and the only party possibly aggrieved by the corrected sentence, Bates bears the burden to affirmatively demonstrate error on the record. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980), citing *State v. Skaggs*, 53 Ohio St.2d 162, 163, 372 N.E.2d 1355 (1978). Therefore, to obtain a reversal of the courts below, Bates must establish that the trial court lacked the power to issue the new sentencing entry in 2018.

**{¶ 39}** This court has "recognized that 'trial courts lack authority to reconsider their own valid final judgments in criminal cases.' " *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 20, quoting *State ex rel. White v. Junkin*, 80 Ohio St.3d 335, 338, 686 N.E.2d 267 (1997); *see also State v. Gilbert*, 143 Ohio St.3d 150, 2014-Ohio-4562, 35 N.E.3d 493, ¶ 9 ("Once a final judgment has been issued pursuant to Crim.R. 32, the trial court's jurisdiction ends").

Nonetheless, trial courts retain continuing jurisdiction to correct a clerical error in a judgment. *Raber* at ¶ 20. As Crim.R. 36 provides, "Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time."

{¶ 40} In *State v. Qualls*, we held that the trial court had authority to correct the failure to include any mention of postrelease control in the sentencing entry by issuing a nunc pro tunc entry "to include in the sentencing entry notification of postrelease control that was properly given in the sentencing hearing." 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, at ¶ 15. "A nunc pro tunc entry * * * relates back to the original sentencing entry," *id.* at ¶ 14, and corrects the error "so that the record speaks the truth," *id.* at ¶ 13. We cautioned, however, that "a nunc pro tunc entry pursuant to Crim.R. 36 to modify a sentencing entry cannot serve to correct the failure to notify a defendant of postrelease control or a mistake in the notification that was given. * * * [T]hat action would improperly change the substance of the entry to include events that never occurred." *Id.* at ¶ 26.

{¶ 41} Therefore, the trial court in this case had inherent authority to correct any deficiency in providing notice of postrelease control in the entry by issuing a nunc pro tunc entry, but only if the trial court gave the notices required by R.C. 2929.19(B) at the original sentencing hearing. Making that determination requires a review of the hearing transcript, but Bates did not ensure that it was included in the record when he appealed to the Eighth District. Rather, he waited until after this court accepted his appeal to move to supplement the record with the transcript of the sentencing hearing, and we denied that request.

{¶ 42} "Where an authenticated transcript of proceedings in the trial court is necessary to exemplify the facts which determined the issues presented there, its absence requires a reviewing court to dismiss the appeal, or to affirm the judgment of the court from which the appeal is taken." *State v. Render*, 43 Ohio St.2d 17, 330 N.E.2d 690 (1975), paragraph two of the syllabus. Therefore, "[w]hen an

appeal is filed in this court without a transcript, we generally presume the regularity of that proceeding and affirm." *Bardwell*, 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, at ¶ 14.

{¶ 43} Without a transcript of the 2008 sentencing hearing, we do not know whether the trial court failed to give all the notices about postrelease control required by R.C. 2929.19.  Bates therefore cannot sustain his burden to demonstrate error on the record.  Rather, we must presume that the trial court complied with the statute and gave those notices at the sentencing hearing.  For this reason, I would hold that the trial court had authority to issue a new entry that includes the notices omitted from the 2008 sentencing entry and affirm the judgment of the Eighth District Court of Appeals.  The majority does not, and I therefore dissent.

_____

**DeWINE, J., dissenting.**

{¶ 44} Once again, this court makes the issue of postrelease control a lot more complicated than it needs to be.  Within the proposition of law we accepted in this case are really two questions: (1) may a trial court that has provided an imperfect advisement about postrelease control in a sentencing entry correct that advisement after the time for a direct appeal has passed? and (2) may a convicted criminal whose sentencing entry contains an imperfect advisement about postrelease control still be placed on postrelease control?

{¶ 45} The answer to both questions is yes.  We need look no further than the plain language of Ohio statutes to get there.  First, there is no statutory requirement that anything about postrelease control be included in a sentencing entry.  Second, R.C. 2929.191(C) grants the trial court authority to hold a hearing and issue a corrected judgment entry when the original notification provided to the offender regarding postrelease control fails to meet judicially manufactured standards.  And third, under R.C. 2929.19(B)(2)(d), the failure to provide a

postrelease-control advisement "does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender."

**{¶ 46}** The majority, though, doesn't follow the statutory scheme. And what it does do doesn't make much sense and is sure to cause a good deal of confusion going forward.

## I. Background

**{¶ 47}** Bates was sentenced in 2008. The judgment entry imposed a period of postrelease control upon his release from prison, stating: "Post release control is part of this prison sentence for 5 years for the above felony(s) under R.C. 2967.28." No one disputes that five years is the proper term of postrelease control for Bates's crimes. And while the entry does not say that this term of postrelease control is mandatory, Bates acknowledges that he was informed of this fact at the sentencing hearing.

**{¶ 48}** At the state's request, the trial court issued a revised sentencing entry in 2018 following a hearing at which the trial court advised Bates of his postrelease-control obligations. The state noted that the original entry had failed to include language indicating that the term of postrelease control imposed upon Bates was mandatory and explaining the consequences of violating the conditions of postrelease control, as required under this court's decision in *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, *overruled on other grounds*, *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248. Bates appealed the revised entry, asserting that the trial court had not imposed a term of postrelease control in 2008 and could not do so by issuing a revised sentencing entry in 2018. Relying on caselaw from this court that has since been overruled, the Eighth District Court of Appeals determined that the improper imposition of postrelease control in the 2008 sentencing entry rendered that part of the sentence void and subject to correction at any point prior to Bates's release from prison. 2020-Ohio-267,

¶ 13-17, citing *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, *overruled by Harper*.

{¶ 49} We accepted Bates's appeal on a single proposition of law: "The failure to include a sentence of post-release control when imposing a prison sentence must be corrected on direct appeal and failure to do so precludes supervision on [postrelease control] at the end of the prison sentence."

## II.  Our Out-of-Control Jurisprudence

{¶ 50} For a long time, our postrelease-control jurisprudence was a mess. *See generally Grimes* at ¶ 57 (DeWine, J., concurring in judgment only).  Between 2004 and 2020, we issued a variety of bewildering pronouncements about what judges needed to say to offenders and what they needed to write in their sentencing entries so as to allow the Adult Parole Authority ("APA") to supervise the offenders after they left prison.  *See, e.g.*, *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864; *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961; *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958 (lead opinion); *Grimes*.  We also issued a confusing, and changing, set of rules about challenges to an improper postrelease-control advisement.  *See, e.g.*, *Bezak*; *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332; *State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960; *Simpkins*; *Grimes.*

{¶ 51} Our jurisprudence suffered from two basic problems.  First, we had largely ignored the straightforward statutory scheme created by the legislature concerning postrelease-control advisements.  *See Grimes* at ¶ 41 (DeWine, J., concurring in judgment only).  Second, we had abandoned traditional principles of res judicata and allowed an improper postrelease-control advisement to be challenged at any time.  *Id.* at ¶ 37 (DeWine, J., concurring in judgment only).

{¶ 52} We fixed the second problem last year in *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, and *State v. Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, 161 N.E.3d 608.  In those cases, we held that an error in the

imposition of postrelease control rendered a sentence voidable, not void. Thus, any challenge to the postrelease-control portion of a sentence needed to be brought on direct appeal.

{¶ 53} What we need to do now is fix the other problem. If we do that—if we simply follow the language of the postrelease-control statutes—this is an easy case.

### III. The Postrelease-Control Statutes Easily Resolve This Case

{¶ 54} While our caselaw on postrelease control is bewildering, the statutory scheme is straightforward.

#### A. *The statutes require only oral notification at the sentencing hearing*

{¶ 55} R.C. 2967.28 sets forth the postrelease-control period for various felonies and specifies whether postrelease control is mandatory or may be imposed at the discretion of the parole board. The only notifications concerning postrelease control are to be provided "at the sentencing hearing." R.C. 2929.19(B)(2). (Although the numbering of the statute has changed since Bates's sentencing, the statutory language is substantively the same.) A trial court that has imposed a prison term is to notify the offender that he "will" or "may" be subject to postrelease control under R.C. 2967.28 after he leaves prison. R.C. 2929.19(B)(2)(c) and (d). In addition, the trial court must notify the offender that if he violates the terms of his postrelease control, the parole board may impose a prison term of up to one-half of the original prison sentence. R.C. 2929.19(B)(2)(e). That's it. These two oral notifications are all that is required by statute concerning postrelease control. There is no requirement that anything be included in the sentencing entry related to postrelease control.

{¶ 56} The notion that postrelease control must be imposed in a sentencing entry is completely judge-made law. It comes from this court's decision in *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, a case that might charitably be described as under-reasoned. There, without any analysis, the court proclaimed:

"[B]ecause the separation-of-powers doctrine precludes the executive branch of government from impeding the judiciary's ability to impose a sentence, the problem of having the Adult Parole Authority impose postrelease control at its discretion is remedied by a trial court incorporating postrelease control into its original sentence." *Id.* at ¶ 19.

**{¶ 57}** What we didn't do in *Jordan*, and what we have failed to do in the years since, is explain in any cogent fashion why the separation-of-powers doctrine requires the judiciary to include a rote recitation about postrelease control in a sentencing entry. The judicial power is the power to render judgments and decide cases. *See Stanton v. Tax Comm.*, 114 Ohio St. 658, 671-672, 151 N.E.760 (1926). It includes the authority to determine guilt or innocence and to make individualized sentencing determinations. *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 136, 729 N.E.2d 359 (2000), citing *State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 648, 4 N.E. 81 (1885), and *Stanton* at 672. The legislative power is the power to make generalized enactments, including the power to prescribe punishment for crimes. *See State v. Morris*, 55 Ohio St.2d 101, 112, 378 N.E.2d 708 (1978), citing *Toledo Mun. Ct. v. State ex rel. Platter*, 126 Ohio St. 103, 184 N.E. 1 (1933); *In re Victor*, 31 Ohio St. 206, 208 (1877); *Peters* at 647.

**{¶ 58}** Once an offender has been convicted of a crime, the question whether someone is subject to postrelease control does not depend on the exercise of the judicial power. Rather, the legislature has made a generalized determination of the crimes for which postrelease control is mandatory and those for which postrelease control is discretionary. With respect to those crimes for which it is discretionary, the legislature has granted the APA the power to decide who must serve postrelease control and for how long. A judge has no decision-making authority in the process, only a statutory obligation to provide oral notification about postrelease control to the offender.

{¶ 59} When it comes to postrelease control, the judge's role is purely ministerial. Thus, it is nonsensical to say that the judicial power is infringed upon "by the imposition of postrelease control absent advisement in the sentencing entry. Such a hypertechnical reading of the separation-of-powers doctrine does nothing to promote the independence of the judiciary; to the contrary, it treats judges as bureaucratic functionaries." *Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, at ¶ 52 (DeWine J., concurring in judgment only).

### B. *A court is authorized to issue a corrected judgment entry*

{¶ 60} Presumably recognizing that this court was causing needless confusion in the area of postrelease control and imposing requirements upon trial judges that were not found in statute, the legislature enacted R.C. 2929.191 to allow trial judges to correct postrelease-control advisements that failed to meet statutory and judicially imposed requirements.

{¶ 61} As this court has explained,

> R.C. 2929.191 establishes a procedure to remedy a sentence that fails to properly impose a term of postrelease control. It applies to offenders who have not yet been released from prison and who fall into at least one of three categories: those who did not receive notice at the sentencing hearing that they would be subject to postrelease control, those who did not receive notice that the parole board could impose a prison term for a violation of postrelease control, or those who did not have both of these statutorily mandated notices incorporated into their sentencing entries.

*Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, at ¶ 23.

{¶ 62} Under R.C. 2929.191, a court is empowered to hold a hearing any time before a defendant is released from prison, to provide an offender with a

postrelease-control advisement, and to incorporate that advisement into a sentencing entry. That is exactly what happened in Bates's case. The majority says that this hearing somehow doesn't count on the theory that Bates wasn't notified that the postrelease-control error would be corrected until he was in front of the judge. But Bates and his counsel were present for the hearing and there has been no suggestion that he suffered prejudice as a result of any deficiency in notice. Moreover, Bates has not raised any argument relating to deficient notice on appeal.

{¶ 63} Our decisions in *Harper* and *Hudson* put to rest the idea that a postrelease-control error rendered a sentence void and could be corrected on that basis at any time. But even though Bates's sentence was not void, R.C. 2929.191 provided statutory authorization for the court to render more complete the advisement about postrelease control in Bates's sentencing entry. The statute remains good law, and there is no reason to ignore the fact that the trial court in this case acted with statutory authorization when it issued a corrected sentencing entry.

### C. The statutory scheme renders most postrelease-control errors harmless

{¶ 64} Furthermore, the statutory scheme renders nearly all postrelease-control errors that occur at sentencing harmless. For sentences imposed after July 11, 2006,

> the failure of a court to notify the offender pursuant to division (B)(2)(d) of this section that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison or to include in the judgment of conviction entered on the journal a statement to that effect *does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender*.

(Emphasis added.) R.C. 2929.19(B)(2)(d); *see also* R.C. 2967.28(B). The statute could not be clearer. A trial court's failure to notify an offender, either orally or in

the judgment entry, that he is subject to a mandatory term of postrelease control does not affect the ability of the APA to impose postrelease control upon the offender.

{¶ 65} Likewise, a trial court's failure to notify an offender of the consequences of violating the conditions of postrelease control or to include a statement to that effect in the judgment entry "does not negate, limit, or otherwise affect the authority of the parole board to so impose a prison term for a violation of that nature if * * * the parole board notifies the offender prior to the offender's release of the board's authority to so impose a prison term." R.C. 2929.19(B)(2)(f); *see also* R.C. 2967.28(D)(1) (requiring the parole board to notify the offender of the potential consequences of violating a condition of postrelease control).

### D.  If we simply follow the statutes, this case is easily resolved

{¶ 66} So if we follow the statutes, this case can be resolved in the state's favor on any number of bases:

1. The only challenge Bates raised was to the terms of his initial sentencing entry, not to the oral advisement.  There is no statutory requirement that anything about postrelease control be included in the sentencing entry.  So, on this basis alone, the state should prevail.

2. If we ignore the fact that the statute doesn't require the postrelease control advisement to be repeated in the sentencing entry, the state still prevails.  This is because R.C. 2929.191(C) expressly authorizes a court to provide a corrected judgment entry.

3. Even if we ignore the absence of a statutory requirement for a postrelease-control advisement in the sentencing entry and we ignore the court's authority to correct a sentencing entry, the parole board still has the authority to supervise Bates upon his release from prison.  R.C. 2929.19(B)(2)(d) and 2967.28(B) make this clear.

## IV. The Majority Creates More Confusion

**{¶ 67}** The majority largely ignores these statutes. In addition, it reaches a result that it not supportable even on its own terms. In the process, it adds more confusion to this body of law.

**{¶ 68}** Recall the proposition of law we accepted: "The failure to include a sentence of post-release control when imposing a prison sentence must be corrected on direct appeal and failure to do so precludes supervision on [postrelease control] at the end of the prison sentence." In his memorandum in support of jurisdiction, Bates asked this court to hold that the failure to impose postrelease control at the time of sentencing is a voidable error that the state must challenge on direct appeal.

**{¶ 69}** The majority answers only the first part of the question. It says that a postrelease-control error may be corrected only on direct appeal and that such an error must be appealed by the state. It then punts on the second part of the question, saying that it "decline[s] to address the effect of the trial court's improper 2008 imposition of postrelease control on the APA's ability to supervise Bates based on the facts and arguments before us," majority opinion, ¶ 31. The problem is that we cannot answer the first part of the question without also addressing the second.

**{¶ 70}** The first part of the question—who must appeal a postrelease-control error—turns on who has been "aggrieved" by the error. In Bates's view, an inadequate postrelease-control notification means that postrelease control has not been imposed at all and that the state loses any opportunity to supervise the offender. In this formulation, the state is the aggrieved party and must appeal. The state's position is that an incomplete explanation about postrelease control in a sentencing entry does not prevent the state from placing an offender on postrelease control. Under this view, Bates is the one who would have benefitted from a sentencing entry explaining the consequences of a violation of postrelease control and whether it was mandatory. Therefore, it is Bates who is aggrieved by a

procedural error in the imposition of postrelease control and he is the one who must appeal.

{¶ 71} The majority's opinion is internally contradictory. In the first part of its opinion, it suggests that unless the sentencing judge strictly satisfies all of the judicially created requirements for the imposition of postrelease control, an offender may not be supervised at all. It says "without postrelease control properly imposed, his liberty would not be restrained after he served his prison sentence and he would not be under the obligations associated with supervision." Majority opinion at ¶ 21. But later on it retreats from this pronouncement, telling us that it "cannot reach the effect of the trial court's improper 2008 imposition of postrelease control on the APA's ability to supervise Bates today," majority opinion at ¶ 27. The reader is left befuddled.

{¶ 72} I, of course, disagree that the state is the aggrieved party here. As I explained in the previous section, the statutory scheme plainly allows postrelease control to be imposed on Bates notwithstanding the purported errors committed by the sentencing judge. Because the APA could supervise Bates regardless of whether he received the judicially created *Grimes* advisement, the advisement would have only served to benefit Bates by providing additional notice about the terms of his supervision. Thus, Bates was the aggrieved party and had the burden to appeal the 2008 sentence.

{¶ 73} Indeed, the majority's conclusion that the state must appeal the omission of the judicially created *Grimes* requirements directly contradicts our recent jurisprudence on this issue. In *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, we considered a deficiency like the one before us here—the failure to include in the sentencing entry language informing the defendant of the consequences of violating postrelease control. We determined that such an error was voidable and must be raised on direct appeal. In so holding, we explicitly "reject[ed] the notion that the failure to incorporate a notice of the consequences of

a violation of postrelease control in the sentencing entry as required by *Grimes* renders the sentence void to the extent that it does not properly impose postrelease control." *Harper* at ¶ 6. And we indicated that it was the defendant who must appeal such an error, concluding that "because Harper could have raised his argument that the trial court failed to properly impose postrelease control on appeal, it is now barred by the doctrine of res judicata." *Id.* at ¶ 41; *see also Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, 161 N.E.3d 608, at ¶ 16.

## V. Conclusion

{¶ 74} Our decisions in *Hudson* and *Harper* provided hope that this court was finally on the path to cleaning up our postrelease-control caselaw that had "confused litigants and jurists alike," *Harper* at ¶ 39. But today, the majority seems determined to put Ohio courts right back in the same soup. Rather than simply follow the postrelease-control statutory scheme, it decrees that the state must appeal any purported technical error in a postrelease-control advisement. Remarkably, it reaches this conclusion without determining what effect, if any, an imperfect postrelease-control advisement has on the state's ability to supervise an offender after he is released from prison. More confusion is sure to follow the majority's decision today.

{¶ 75} Things need not be so complicated. I would follow the straightforward statutory scheme that the legislature has enacted. And on this basis, I would affirm the judgment of the court of appeals.

FISCHER, J., concurs in the foregoing opinion except for paragraphs 64 and 65 and basis No. 3 in paragraph 66.

––––––––––––––––

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, for appellee.

Mark A. Stanton, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Zachery P. Keller, Deputy Solicitor General, urging affirmance for amicus curiae, Attorney General Dave Yost.

_____