OPINION
{¶ 1} Defendant-appellant, Sterling M. Jackson, appeals his convictions in the Butler County Court of Common Pleas for escape and two counts of burglary.
 {¶ 2} On November 20, 2002, appellant pled guilty to burglary and trespass. He was sentenced to 17 months and 11 months on the charges, to run concurrently. Appellant served his sentences and was placed on post-release control.
 {¶ 3} On May 26, 2004, appellant was arrested for burglary after he was observed taking items out of a building in Middletown, Ohio. The building was owned by Robin Hood, who was in prison at the time, and was being watched by Hood's cousin, Myles Silas. When Silas drove to the property to check on it, he observed appellant and two other men removing construction materials from the building. Silas confronted the men and made them return the items. When Silas went to a neighbor's house to call the police, appellant left the scene.
 {¶ 4} When police arrived, they were informed that appellant was running down the street. Officers pursued appellant, and during the chase, he entered and ran through a house. Appellant was apprehended by police and charged with two counts of burglary. He was also charged with escape, on the basis that he broke detention by failing to report to his parole officer pursuant to the terms of his post-release control.
 {¶ 5} Appellant pled guilty to the escape charge and a jury trial was held on the two burglary charges. A jury convicted appellant of both burglary charges and he was sentenced by the trial court. Appellant appealed the escape conviction, and also appealed one of the burglary convictions. The cases were consolidated on appeal and appellant raises the following two assignments of error for our review:
 {¶ 6} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY CONVICTING HIM OF ESCAPE WHEN HE HAD NOT BEEN ADVISED PRIOR TO HIS SENTENCING ON THE UNDERLYING CHARGE THAT POST RELEASE CONTROL WOULD BE IMPOSED ON HIS RELEASE FROM PRISON."
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DENYING HIS MOTION PURSUANT TO CRIMINAL RULE 29 FOR DISMISSAL OF COUNT ONE OF THE INDICTMENT AS THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH BEYOND A REASONABLE DOUBT THAT HE HAD TRESPASSED IN AN OCCUPIED STRUCTURE AS REQUIRED UNDER R.C. 2911.12."
 {¶ 8} In his first assignment of error, appellant argues that because the trial court failed to notify him about post-release control at his sentencing hearing in 2002, the Adult Parole Authority (APA) did not have authority to place him on post-release control. He contends that because he could not be placed on post-release control, he could not be convicted of escape for failure to report to his parole officer.
 {¶ 9} In State v. Jordan (2004), 104 Ohio St.3d 21,2004-Ohio-6045, the Ohio Supreme Court examined the statutory requirement that a defendant be informed of post-release control at the sentencing hearing. The court determined that "when sentencing a felony offender to a term of imprisonment, a trial court is required to notify the offender at the sentencing hearing about post-release control and is further required to incorporate that notice into its journal entry imposing sentence." Id. at ¶ 17. In Jordan, the court found that the trial court's failure to properly notify the offender of post-release control at the sentencing hearing rendered the sentence void, and the case was remanded to the trial court for resentencing. Id. at ¶ 23-27.
 {¶ 10} Appellant argues that pursuant to Jordan, because the trial court failed to inform him of the post-release control terms at his sentencing, the APA was without authority to impose a term of post-release control and therefore, his conviction for escape, which was based on the failure to comply with the terms of post-release control, is void. The state presents two arguments in response.
 {¶ 11} First, the state argues that appellant's conviction and sentence for the 2002 burglary and trespass became final before Jordan was decided, and the holding in Jordan is not applicable retroactively. A new judicial ruling may only be applied to cases that are pending on the announcement date and may not be applied retroactively to cases where the conviction has become final because all appellate remedies have been exhausted. Ali v. State, 104 Ohio St.3d 328, 2004-Ohio-6592. Initially, this approach appears to have merit, as the Ohio Supreme Court has previously determined that the holdings of other sentencing cases may not be applied retroactively. See id. (holding in State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, may not be applied retroactively); Jimison v. Wilson,106 Ohio St.3d 342, 2005-Ohio-5143 (holding in State v. Brooks,103 Ohio St.3d 134, 2004-Ohio-4746, may not be applied retroactively).
 {¶ 12} However, after appellant's case was submitted to this court, the Ohio Supreme Court specifically examined the issue of retroactive application of Jordan in Hernandez v. Kelly,
___ Ohio St.3d ___, 2006-Ohio-126. In Hernandez, the trial court failed to discuss post-release control when the defendant was sentenced in 2000. On his release from prison, the defendant was placed on post-release control. He violated the terms and after a violation hearing, the APA imposed an additional prison sentence of 160 days. The defendant filed a habeas corpus action, arguing that because the APA was without authority to place him on post-release control pursuant to Jordan, he could not therefore be sentenced on a violation of post-release control.
 {¶ 13} The court found that application of Jordan to a defendant whose sentence became final in 2000 did not create a retroactivity problem because the court was not announcing a new rule of law in Jordan. Instead, the court found that Jordan
reaffirmed the holding in Woods v. Telb (2000),89 Ohio St.3d 504. Id. at ¶ 24. The court further determined that Jordan,
"merely determined what the applicable [sentencing] statutes * * * have meant since their enactment." Id. The court held that the APA was without authority to put Hernandez on post-release control and to sanction him for violating the terms in the absence of the appropriate notification by the trial court at sentencing. Id. at 32. The court therefore ordered Hernandez released from prison and from further post-release control. Id. Therefore, based on Hernandez, we find that the principles inJordan are applicable to this case.
 {¶ 14} The state also argues that even if Jordan can be applied retroactively, the trial court met the statutory requirements of informing appellant of post-release control during the sentencing hearing in 2002. At this hearing, which was a combined plea and sentencing hearing, appellant indicated that he wanted to plead guilty to guilty to the charges against him. The trial court engaged in a dialogue with appellant regarding the rights he would be giving up and the potential consequences of his guilty plea. As part of this discussion, the court discussed the potential sentence it could impose.
 {¶ 15} The court stated, "And, if I sent you to prison, the parole authority could decide if you're going to be on parole for a period of three to five years once you are released. And if you violated the rules and regulations, they can send you back to prison even if you did every single day on the sentence, they can give you additional time. Do you understand that?" Appellant responded that he understood, and the court continued, "They can give you additional time up to a maximum of one-half of whatever I sentence you to. Do you understand that?" When appellant responded that he understood, the court continued, "And one of the things was [if] you failed to report to your parole officer, not only can they give you additional time, but they can also turn around and charge you with escape[,] a felony charge. Do you understand that?" Appellant responded that he understood. After this discussion, the court accepted appellant's plea and sentenced him to 17 months on the burglary charge and 11 months on the theft charge, to run concurrently.
 {¶ 16} We first note that there are several misstatements in the trial court's discussion with appellant regarding post-release control. First, the court referred to post-release control as "parole," when the two terms have separate legal definitions. See State v. Martello, 97 Ohio St.3d 398,2002-Ohio-6661 ("In place of parole, SB 2 introduced the concept of post-release control * * *"); Woods v. Telb,89 Ohio St.3d 504, 508, 2000-Ohio-171; see, also, State v. Prom, Butler App. No. CA2002-01-007, 2003-Ohio-6543. The court also misstated the amount of time appellant could be subject to post-release control as three to five years, when R.C. 2967.28 specifies that the period of time an offender, like appellant, who is sentenced for a fourth or fifth-degree felony could be subject to is up to three years.
 {¶ 17} However, we find these misstatements of no consequence after a review of the entire hearing, and the trial court record. From a review of the transcript, it is clear from the context and particulars of the statement that the court was discussing post-release control, and not parole, as the concept discussed was a period of supervision after appellant had served his prison term. In addition, appellant indicated at the hearing that he had read and understood the plea agreement form that he signed which correctly referred post-release control and correctly specified up to three years as the potential period of supervision. Finally, the trial court's judgment entry of conviction correctly states that a period of post-release control is optional for up to a maximum of three years. Therefore, we find the court's statements sufficient to notify appellant that post-release control was part of his sentence.
 {¶ 18} Appellant further argues on appeal that the trial court's statements do not meet the requirement that a defendant be informed "at the sentencing hearing" that he will be subject to post-release control because the statements occurred during the plea hearing. Because appellant's plea and sentencing occurred together at the same hearing, at the same time, we find no reason to segregate the separate portions of the hearing into two discrete and distinct hearings. The trial court informed appellant that if he was sentenced to prison, post-release control would be part of his sentence, then proceeded to sentence him to prison.
 {¶ 19} A similar provision of the Revised Code requires the trial court to inform an offender "at the sentencing hearing" of the specific prison term he will receive if he violates the terms of a community control sanction. In discussing this requirement, the Ohio Supreme Court stated, "[w]e recognize that in this case, the trial court proceeded to sentence appellant immediately after the plea hearing was held. In this situation, we see no reason to consider the plea hearing and sentencing hearing to be two separate hearings for purposes of R.C. 2929.19(B)(5)." State v.Brooks, 103 Ohio St.3d 134, 2004-Ohio-4746, fn.1. We find the same principle applicable to this case, which also requires notification "at the sentencing hearing." Accordingly, appellant's first assignment of error is overruled.
 {¶ 20} In his second assignment of error, appellant contends that the trial court erred in failing to grant his Crim.R. 29 motion on the basis that there was insufficient evidence of an "occupied structure" to support his conviction for burglary.
 {¶ 21} When reviewing a trial court's denial of a motion for acquittal under Crim.R. 29, this court applies the same test that it would in reviewing a challenge based upon sufficiency of the evidence to support a conviction. State v. Thompson (1998),127 Ohio App.3d 51. Evidence is sufficient to support a conviction if any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 22} Appellant was convicted of burglary, in violation of R.C. 2911.12(A)(3), which states: "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense."
 {¶ 23} R.C. 2909.01(C) defines an "occupied structure" as "any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
 {¶ 24} "(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.
 {¶ 25} "(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.
 {¶ 26} "(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.
 {¶ 27} "(4) At the time, any person is present or likely to be present in it."
 {¶ 28} Under subsection (1) above, the question is whether the house was being "maintained" as a "dwelling." Appellant argues that the building was not occupied because Hood, the owner, was in prison and not residing in the house. Appellant further argues that there was no evidence introduced to establish when Hood would be released from prison and a house that is unoccupied for an indefinite period of time can not be an occupied structure.
 {¶ 29} The issue of whether a house is an "occupied structure" when it is temporarily unoccupied has been addressed in numerous cases in Ohio. At common law, in order to commit a burglary, a house had to be occupied as a dwelling, although a temporary absence with the intention of returning would not render it unoccupied. State v. Green (1984), 18 Ohio App.3d 69,71. However, if a house was permanently abandoned or its use was changed to something other than residential, it would cease to be considered a dwelling. Id.
 {¶ 30} In analyzing the statutory definition, the Tenth District stated: "It is obvious that the General Assembly, in adopting the definition of `occupied structure' found in R.C.2909.01, intended to broaden the concept of the offense of burglary from one of an offense against the security of habitation, to one concerned with the serious risk of harm created by the actual or likely presence of a person in a structure of any nature. In that context, it is noteworthy that the General Assembly utilized the word `maintained' in division (A), as opposed to `occupied,' although it did use that latter word in division (B), which deals with structures other than dwellings. We believe that the distinction between `maintained' and `occupied' is significant, in the sense that the former alludes more to the character or type of use for which the dwelling is intended to be subjected, whereas the latter is more closely related to the actual use to which the structure is presently being subjected." Id. at 71-72.
 {¶ 31} The court continued, stating: "Thus, a structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but, which has neither been permanently abandoned nor vacant for a prolonged period of time, can be regarded as a structure "maintained" as a dwelling within the meaning of division (A). In this context, then, division (A) includes a dwelling whose usual occupant is absent on prolonged vacation, a dwelling whose usual occupant is receiving long-term care in a nursing home, a summer cottage, or a residential rental unit which is temporarily vacant. In all these examples, even though the dwelling is not being presently occupied as a place of habitation, that situation is temporary, and persons are likely to be present from time to time to look after the property — to help "maintain" its character as a dwelling."
 {¶ 32} Using this definition, Ohio courts have determined that a building in which the owner had died, and was vacant for several months, but which was still being maintained as a residence was an occupied structure. State v. Barker, Licking App. No. 01-CA-0027, 2001-Ohio-1442. Likewise, a home in which the owner was sick and had gone to stay with his daughter ten months before the burglary occurred was found to be an occupied structure. State v. Dillard (Jan. 14, 2000), Montgomery App. No. 17761. Similarly, an apartment purchased with the intent of renting it out for investment purposes, a home that was vacant while being repaired, and a home uninhabitable while undergoing major renovations, were all found to meet the definition of an occupied structure. State v. Craig (Apr. 8, 1998), Summit App. No. 18350; State v. Tornstrom (Nov. 19, 1998), Cuyahoga App. No. 72898; State v. Woodruff, Lucas App. No. L-04-1125,2005-Ohio-2268. In another case, the bottom portion of a duplex, owned by a person in prison, which held his possessions, and to which he intended to return was held to be an occupied structure, even though it had been secured by court order pending forfeiture and had the windows boarded up and padlocks placed on the home.State v. McLemore (Aug. 30, 1995), Lorain App. 95CA006037.
 {¶ 33} In this case, the owner testified that the building was a four-unit apartment building, in which one of the units was currently rented out. He stated that he was in the process of doing renovations and modernizing the building and was storing building materials in one of the apartments. He testified that although the last time he saw the building was in November 2003, he received all of his mail there and all his property was still in the building. He stated that even though he is temporarily gone, the building is still his residence, is being maintained by Myles, and that it has not been abandoned.
 {¶ 34} Given these facts, we find that the building was an "occupied structure" within the meaning of R.C. 2909.01(C)(1). We find no merit to appellant's argument regarding the lack of evidence of the length of time the owner would be absent, as the relevant inquiry focuses on the nature for which the building is used, not the length of a temporary absence. Accordingly, we find that the trial court did not err in denying appellant's Crim.R. 29 motion because the evidence was sufficient to establish the essential elements of burglary proven beyond a reasonable doubt. Appellant's second assignment of error is overruled.
 {¶ 35} Judgment affirmed.
Walsh, P.J., and Young, J., concur.