[Cite as *State v. Flecha*, 2026-Ohio-980.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                                    :

    Appellee,                                   :
                          CASE NO. CA2025-07-064

vs.                                              :
                         OPINION AND
                        JUDGMENT ENTRY
LUIS LEONARDO FLECHA,                            :
                         3/23/2026

    Appellant.                                  :

                                                 :


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 25CR42338


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.


**O P I N I O N**


**M. POWELL, J.**

{¶ 1}   Defendant, Luis Leonardo Flecha, appeals the sentence imposed by the

Warren County Court of Common Pleas following his guilty plea. Because the trial court failed to orally advise Flecha of the consequences of violating postrelease control, we reverse in part and remand.

## I. Factual and Procedural Background

{¶ 2}   On January 13, 2025, a grand jury indicted Flecha on one count of assault on a peace officer in violation of R.C. 2903.13, a fourth-degree felony. The charge arose from an incident at Atrium Hospital, where Flecha, who was already incarcerated and serving a prison sentence on unrelated charges, assaulted a police officer while hospitalized.

{¶ 3}   On July 25, 2025, Flecha appeared before the trial court for a consolidated plea and sentencing hearing. Under a negotiated plea agreement between Flecha and the State, the parties agreed that Flecha would plead guilty to the charged offense and that they would jointly recommend he receive a six-month prison term, to be served consecutively to the prison sentence he was already serving.

{¶ 4}   At the hearing, the trial court addressed Flecha personally and conducted a thorough plea colloquy. The court inquired about Flecha's age, citizenship, education, ability to read and write English, whether he was under the influence of any substances, and whether anyone had coerced or improperly induced him to enter the plea. The court then explained the nature of the offense, the maximum penalties, and the constitutional rights Flecha would waive by pleading guilty.

{¶ 5}   During the plea colloquy, the following exchange occurred regarding post-release control:

> THE COURT: . . . You're going to be entering a plea of guilty to one count of assault. This is fourth degree felony. It's punishable by up to eighteen months in prison. It also carries with it an optional period of post-release control of up to two years. That means that the Adult Parole Authority can

- 2 -

supervise you for two years upon your release. You already understand that because of your burglary charge, right?

DEFENDANT FLECHA: PRC is mandatory for this?

THE COURT: PRC is optional for this, right? I don't have the plea form in front of me, but it's an optional period of post-release?

[PROSECUTOR]: That's correct, Judge.

DEFENDANT FLECHA: I'm already going to be in PRC.

THE COURT: I would imagine that that is the case.

DEFENDANT FLECHA: Okay.

Notably absent from this colloquy, and from the remainder of the hearing, was any oral advisement to Flecha regarding the consequences of violating postrelease control required under R.C. 2929.19(B)(2)(f).

{¶ 6}  After determining that Flecha's plea was knowing, voluntary, and intelligent, the court accepted the guilty plea and proceeded immediately to sentencing without a break in the proceedings. No presentence investigation was ordered, and the State did not present a comprehensive statement of facts or a detailed recitation of Flecha's criminal history to the trial court.

{¶ 7}  At sentencing, the trial court imposed the jointly recommended sentence of six months in prison, to be served consecutively to the sentence Flecha was already serving. The court made some findings on the record regarding consecutive sentencing, stating that consecutive sentences were necessary to protect the public and were not disproportionate to the seriousness of Flecha's conduct. The court did not, however, orally make the additional finding required under R.C. 2929.14(C)(4)(a), (b), or (c).

{¶ 8}  The trial court's subsequent judgment entry contained additional provisions. It included the requisite advisements regarding postrelease control, including the

- 3 -

consequences of violating postrelease control. It also included written findings supporting consecutive sentences under R.C. 2929.14(C)(4)(b) and (c), referencing course of conduct and criminal history.

{¶ 9} Flecha appealed.

## II. Analysis

{¶ 10} Flecha presents two assignments of error challenging his sentence. First, he contends that the trial court erred in imposing postrelease control by failing to advise him orally of the consequences of violating postrelease control. Second, he argues that the trial court erred in imposing consecutive sentences by failing to make orally all required findings and by making the findings in the judgment entry without adequate record support.

## A. Standard of Review

{¶ 11} We review felony sentences under R.C. 2953.08(G)(2), which provides that an appellate court may increase, reduce, modify, or vacate a sentence if it clearly and convincingly finds that the record does not support the trial court's findings under R.C. 2929.14(C)(4) (among other statutory provisions) or that the sentence is otherwise contrary to law. *State v. Gwynne*, 2022-Ohio-4607, ¶ 19. But R.C. 2953.08(D)(1) provides that a "sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." When all three conditions are satisfied, an appellate court lacks jurisdiction to review the sentence. *State v. Underwood*, 2010-Ohio-1, ¶ 16.

{¶ 12} In *Underwood*, the Ohio Supreme Court clarified that a sentence is "authorized by law" within the meaning of R.C. 2953.08(D)(1) "only if it comports with all mandatory sentencing provisions." *Id.* at ¶ 20. The Court explicitly rejected a narrow

interpretation that would render a sentence "authorized by law" merely because it falls within the statutory range for the offense. Such an interpretation, the Court reasoned, "would mean that jointly recommended sentences imposed within the statutory range but missing mandatory provisions, such as postrelease control (R.C. 2929.19[B][3][c]) or consecutive sentences (R.C. 2929.14[D] and [E]), would be unreviewable." *Id.* The Court found this result untenable, emphasizing that "sentences that do not comport with mandatory provisions are subject to total resentencing" and that "agreement to such sentences" cannot "insulate them from appellate review, for they are not authorized by law." *Id.*

### B. Postrelease Control

{¶ 13}  The first assignment of error alleges:

THE TRIAL COURT FAILED TO PROPERLY IMPOSE PRC.

{¶ 14}  In his first assignment of error, Flecha contends that the trial court failed to properly impose postrelease control. Specifically, he argues that the trial court's oral advisement regarding postrelease control was deficient in two respects: first, that it occurred during the plea colloquy rather than at sentencing; and second, that the trial court failed to advise him of the consequences of violating postrelease control as required by R.C. 2929.19(B)(2)(f). The State concedes that the trial court failed to advise Flecha orally of the consequences of violating postrelease control but contests the first point.

### 1. Jurisdictional Question

{¶ 15}  Before reaching the merits of Flecha's claim, we must first address whether this court has jurisdiction to review his sentence at all under R.C. 2953.08(D)(1).

{¶ 16}  Here, it is undisputed that Flecha and the State jointly recommended the six-month prison sentence and that the trial court imposed the agreed sentence. The question, then, is whether Flecha's sentence was "authorized by law." The answer to that

- 5 -

question determines whether we may proceed to evaluate the merits of his postrelease-control challenge.

{¶ 17} The proper imposition of postrelease control is a mandatory sentencing provision. "[A] trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing." *State v. Jordan*, 2004-Ohio-6085, ¶ 23, *overruled on other grounds by State v. Harper*, 2020-Ohio-2913. Consequently, when a trial court fails to comply with mandatory postrelease-control-notification requirements, the resulting sentence is not "authorized by law," and the bar on appellate review under R.C. 2953.08(D)(1) does not apply. *See Underwood*, 2010-Ohio-1, at ¶ 20.

{¶ 18} The State concedes that the trial court failed to advise Flecha orally of the consequences of violating postrelease control as mandated by R.C. 2929.19(B)(2)(f). Because the trial court did not comply with this mandatory sentencing provision, Flecha's sentence is not "authorized by law" for purposes of R.C. 2953.08(D)(1), and we have jurisdiction to review his claim. We therefore turn to the merits.

## 2. Statutory Requirements for Postrelease Control Notification

{¶ 19} The law imposes specific notification requirements when a trial court sentences a defendant to a prison term that subjects the defendant to postrelease control. Because Flecha was convicted of assault on a peace officer, a fourth-degree felony, he was potentially subject to postrelease control. R.C. 2967.28(C) (stating that a prison sentence for a fourth-degree felony subjects the offender to up to two years of postrelease control "if the parole board . . . determines that a period of post-release control is necessary").

{¶ 20} R.C. 2929.19(B)(2) sets forth the trial court's notification duties when it "determines at the sentencing hearing that a prison term is necessary or required." Pertinent here, subdivision (e) requires the court to notify the offender "that the offender

may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree" that is not otherwise subject to mandatory postrelease control. Subdivision (f), in turn, requires the court to notify the offender "that, if a period of supervision is imposed following the offender's release from prison . . . and if the offender violates that supervision or a condition of post-release control imposed under division (B) of section 2967.131 of the Revised Code, the parole board may impose a prison term, as part of the sentence, of up to one-half of the definite prison term originally imposed upon the offender."

{¶ 21} These two provisions impose two distinct but related notification obligations. Subdivision (e) informs the offender that postrelease control is possible, and subdivision (f) informs the offender of the consequences that attach if that postrelease control is later violated. A trial court must satisfy both requirements to properly impose postrelease control on a defendant sentenced for a lower-level felony. *See State v. Grimes*, 2017-Ohio-2927, ¶ 1*, overruled on other grounds by Harper*, 2020-Ohio-2913.

### 3. The Combined Plea and Sentencing Hearing

{¶ 22} We first consider whether the trial court satisfied its obligation under R.C. 2929.19(B)(2)(e) to notify Flecha that postrelease control is possible after his release from prison. Flecha argues that the trial court's advisement was insufficient because it occurred during the plea colloquy rather than at the "sentencing hearing" as the statute requires.

{¶ 23} We reject Flecha's argument that this notification was deficient simply because it occurred during the plea colloquy rather than during a formal "sentencing hearing." Ohio courts, including this one, have held that when a trial court provides proper postrelease-control notification before accepting a defendant's guilty plea and then proceeds immediately to sentencing, the plea hearing and the sentencing hearing "cannot, for purposes of the post-release control statutes, reasonably be deemed to have

been conducted separately." *State v. Renne*, 2021-Ohio-2648, ¶ 18 (5th Dist.); *accord State v. Dardinger*, 2017-Ohio-1525, ¶ 13 (1st Dist.); *State v. Jackson*, 2006-Ohio-1147, ¶ 18 (12th Dist.) ("Because appellant's plea and sentencing occurred together at the same hearing, at the same time, we find no reason to segregate the separate portions of the hearing into two discrete and distinct hearings.").

{¶ 24} This principle finds support in the Ohio Supreme Court's reasoning in *State v. Brooks*, 2004-Ohio-4746. There, the Court addressed a similar provision of the Revised Code requiring the trial court to inform an offender "at the sentencing hearing" of the specific prison term he will receive if he violates the terms of a community-control sanction. The Court recognized that when "the trial court proceeded to sentence appellant immediately after the plea hearing was held," there was "no reason to consider the plea hearing and sentencing hearing to be two separate hearings" for purposes of the statutory notification requirement. *Id.* at ¶ 17, fn. 1.

{¶ 25} This principle makes sense. When plea and sentencing proceedings occur in immediate succession as part of a single, continuous hearing, the defendant receives all relevant information in one consolidated proceeding. The statutory purpose of ensuring the defendant is informed of postrelease control before being sentenced is fully satisfied. To require the trial court to repeat verbatim the same advisements it provided moments earlier would needlessly elevate form over substance.

{¶ 26} Here, the trial court informed Flecha, before accepting his guilty plea, that his conviction carried a potential period of postrelease control of up to two years and that the Adult Parole Authority could supervise him on his release. The court then proceeded immediately to sentencing without a break. Under these circumstances, we conclude the trial court satisfied its notification obligation under R.C. 2929.19(B)(2)(e).

**4. The Trial Court's Failure to Comply with R.C. 2929.19(B)(2)(f)**

{¶ 27} The State concedes, however, that the trial court failed to advise Flecha orally of the consequences of violating postrelease control as required by R.C. 2929.19(B)(2)(f). Our review of the record confirms this concession is well-founded.

{¶ 28} The transcript reveals that although the trial court informed Flecha of the possibility and duration of postrelease control, it never advised him that if he violates post-release control, "the parole board may impose a prison term, as part of the sentence, of up to one-half of the definite prison term originally imposed" on him. R.C. 2929.19(B)(2)(f). This advisement was not provided during the plea colloquy, nor was it provided during the sentencing portion of the combined hearing. The sentencing entry does contain the consequences language, but that written notification cannot cure the trial court's failure to provide the required oral notification at the hearing itself. *See State v. Bates*, 2022-Ohio-475, ¶ 12 (explaining that "once the court orally provides all the required advisements at the sentencing hearing, it must incorporate them into the sentencing entry").

{¶ 29} The Ohio Supreme Court has made clear that the notification requirements of R.C. 2929.19(B)(2) are not mere formalities. As the Court explained in *Bates*, the trial court "must advise the offender at the sentencing hearing of the term of supervision, whether postrelease control is discretionary or mandatory, and the consequences of violating postrelease control." *Id.* at ¶ 11. The consequences notification is a distinct and essential component of the statutory scheme.

{¶ 30} We recognize that under *Harper*, 2020-Ohio-2913, errors in the imposition of postrelease control no longer render a sentence void. The Supreme Court held that "[w]hen a case is within a court's subject-matter jurisdiction and the accused is properly before the court, any error in the exercise of that jurisdiction in imposing postrelease control renders the court's judgment voidable, permitting the sentence to be set aside if the error has been successfully challenged on direct appeal." *Harper* at ¶ 4.

{¶ 31} Flecha has timely challenged the trial court's failure to provide the consequences notification on direct appeal. Because the trial court failed to orally advise Flecha that the parole board may impose a prison term of up to one-half of his stated prison term if he violates postrelease control, the imposition of postrelease control was defective. This error renders his sentence voidable, and having been successfully challenged on direct appeal, it must be corrected.

### 5. The Dissent's Plain-Error Analysis

{¶ 32} The dissent contends that, even if we have jurisdiction, a Crim.R. 52 plain-error analysis would require us to overrule this assignment of error because Flecha cannot establish prejudice from the trial court's failure to provide the required oral notification. The dissent's analysis misapprehends the nature of postrelease-control errors and cannot be reconciled with the Ohio Supreme Court's decision in *Bates*.

{¶ 33} There is no dispute that by failing to advise Flecha at the sentencing hearing of the consequences of violating postrelease control, the trial court did not validly impose postrelease control. *See Bates*, 2022-Ohio-475, at ¶ 23 (explaining that "to validly impose postrelease control as part of a defendant's sentence, the trial court must orally provide all the required advisements at the sentencing hearing and it must incorporate those advisements into the sentencing entry"). There is likewise no dispute that neither party raised this error to the trial court. The question the dissent poses is whether plain-error analysis applies to a trial court's invalid imposition of postrelease control. We do not think it does.

{¶ 34} To prevail under a plain-error analysis, the appellant must show that an error occurred, that the error was plain, and that it affected substantial rights. *See State v. Rogers*, 2015-Ohio-2459, ¶ 22; Crim.R. 52(B). What must be demonstrated, therefore, is "a reasonable *probability* that the error resulted in prejudice." (Emphasis sic.) *Id*. Here,

- 10 -

there is no question that an error occurred, and no question that the error was obvious. The critical inquiry under the dissent's analysis is whether Flecha can demonstrate prejudice. But that inquiry reflects a fundamental misunderstanding of who is harmed when a trial court fails to validly impose postrelease control.

{¶ 35} The Ohio Supreme Court made clear in *Bates* that a trial court's failure to validly impose postrelease control is inherently prejudicial to the State, not the defendant. The Court explained: "The trial court's errors in imposing the postrelease-control portion of the sentence were to [the defendant's] benefit; without postrelease control properly imposed, his liberty would not be restrained after he served his prison sentence and he would not be under the obligations associated with supervision." *Bates* at ¶ 21. The Court held that these errors "'injuriously affect'" the State and its interest in regulating the defendant's conduct for safe reintegration into society. *Id*., quoting *Ohio Contract Carriers Assn. v. Pub. Util. Comm.*, 140 Ohio St. 160 (1942), at syllabus. Based on this, the Court said that "the party that benefits from an error cannot be the party aggrieved," *id*. at ¶ 20, and therefore "the state, as the aggrieved party, should have appealed," *id*. at ¶ 22.

{¶ 36} This reasoning forecloses the dissent's plain-error analysis. Flecha cannot coherently argue that he was prejudiced by an error that prevented the valid imposition of a sanction against him. *See Bates*, 2022-Ohio-475, at ¶ 23. And while R.C. 2929.19(B)(2)(f) provides that an error in advising the offender of the consequences of violating postrelease control "does not negate, limit, or otherwise affect the authority of the parole board to so impose a prison term", *if* the parole board notifies the offender prior to release, this provision does not entirely remove the prejudice to the State. Without a proper advisement at the sentencing hearing, the possibility remains that postrelease control will not attach to the sentence, because the parole board might fail to notify the offender. When the State's interest in supervising an offender after release from prison is

placed at risk by a trial court's failure to comply with mandatory notification requirements, the State is aggrieved.

{¶ 37} The dissent suggests that Flecha's awareness of postrelease control from another case, combined with the written notification in the sentencing entry, should foreclose relief. But neither fact alters the legal consequence of the trial court's error. The question is whether the trial court in this case validly imposed postrelease control as part of this sentence, and under *Bates*, the answer is no. Written notification cannot cure what the statute requires to be provided orally at the sentencing hearing. *See Bates* at ¶ 12.

{¶ 38} Moreover, the General Assembly has provided a mechanism for correcting precisely this type of error. R.C. 2929.191 "provides a procedure to correct a court's failure to validly impose postrelease control." *Id.* at ¶ 30. This statute "applies prospectively to sentences entered on or after July 11, 2006, that lack proper imposition of postrelease control," permitting trial courts to "correct those sentences in accordance with the procedures set forth in that statute." *State v. Singleton*, 2009-Ohio-6434, ¶ 35. The existence of this statutory correction mechanism underscores that the legislature anticipated situations in which trial courts would fail to validly impose postrelease control and provided a path to remedy such failures. Applying plain-error analysis to bar correction of these errors would frustrate the legislative purpose underlying R.C. 2929.191.

{¶ 39} Finally, that the State did not file a cross-appeal is immaterial. Both parties concede the error occurred, and both parties agree that remand is the appropriate remedy. We are not called on to determine whether Flecha suffered prejudice from an error that favored him; we are called on to correct a statutory violation that both parties acknowledge occurred and that the General Assembly has expressly authorized trial courts to remedy.

{¶ 40} For these reasons, we decline to adopt the dissent's plain-error analysis.

## 6. Conclusion

{¶ 41} The first assignment of error is sustained in part and overruled in part. We overrule Flecha's claim that the trial court failed to properly notify him that postrelease control was discretionary and could last up to two years, as that notification was properly provided during the combined plea and sentencing hearing. But we sustain his claim that the trial court failed to advise him orally of the consequences of violating postrelease control. The appropriate remedy is to remand for the limited purpose of providing Flecha with the oral notification required by R.C. 2929.19(B)(2)(f), thereby permitting the trial court to validly impose postrelease control as part of his sentence using the postrelease control correction procedures in R.C. 2929.191. This is the same remedy we employed in the analogous cases of *State v. Bryars*, 2024-Ohio-2765, ¶ 31-32 (12th Dist.), and *State v. Ward*, 2024-Ohio-2858, ¶ 9-10 (12th Dist.). *See also State v. Stamaty*, 2024-Ohio-54, at ¶ 13 (5th Dist.) (reversing and remanding "for resentencing with the proper notification of postrelease control" while affirming the trial court's judgment "in all other respects").

## C. Consecutive Sentencing

{¶ 42} The second assignment of error alleges:

THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES.

{¶ 43} In his second assignment of error, Flecha contends that the trial court erred when it imposed consecutive sentences. He argues, first, that the trial court failed to make all the required statutory findings orally at the sentencing hearing, and second, that the written findings in the sentencing entry regarding course of conduct and criminal history lack support in the record.

{¶ 44} Once again, before reaching the merits of this sentence challenge, we must

first determine whether we possess jurisdiction to review the sentence at all.

## 1. Jurisdictional Question

{¶ 45} The threshold question here, like it was in the first assignment of error, is whether Flecha's consecutive sentence is subject to appellate review under R.C. 2953.08(D)(1), which provides that a "sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."

{¶ 46} There is no dispute that two of the three statutory conditions are met here. The record clearly establishes that Flecha and the State jointly recommended the sentence, including the provision that the six-month prison term be served consecutively to the sentence Flecha was already serving. The trial court imposed the agreed-upon sentence. The question, then, is whether the sentence is "authorized by law."

{¶ 47} A sentence is "authorized by law" within the meaning of R.C. 2953.08(D)(1) "only if it comports with all mandatory sentencing provisions." *Underwood*, 2010-Ohio-1, at paragraph two of the syllabus. Mandatory sentencing provisions include the consecutive-sentence statute, R.C. 2929.14(C)(4). *State v. Frazier*, 2024-Ohio-2114, ¶ 17 (12th Dist.).

{¶ 48} Flecha's argument assumes that the required consecutive-sentencing findings under R.C. 2929.14(C)(4) constitute a "mandatory sentencing provision" that renders a sentence unauthorized by law if they are not made. This assumption is incorrect.

## 2. Consecutive-Sentence Findings Are Not Required for Jointly Recommended Sentences

{¶ 49} In *State v. Sergent*, 2016-Ohio-2696, the Ohio Supreme Court squarely

addressed whether a trial court must make the R.C. 2929.14(C)(4) consecutive-sentence findings when imposing a jointly recommended sentence that includes consecutive sentences. The Court answered this question in the negative. *Sergent* at ¶ 43. Relying on its earlier decision in *State v. Porterfield*, 2005-Ohio-3095, the Court explained that the consecutive-sentencing statute is discretionary, not mandatory, and that once a defendant stipulates to a particular sentence, "'the sentencing judge no longer needs to independently justify the sentence.'" *Sergent* at ¶ 21, quoting *Porterfield* at ¶ 25. The Supreme Court observed that "[t]he trial judge made all of the consecutive sentence findings in the sentencing entry, but only some of those findings at the sentencing hearing. However, compliance with R.C. 2929.14(C)(4) was not necessary because the consecutive sentences were jointly recommended" and imposition of consecutive sentences was discretionary. *Sergent* at ¶ 44.

{¶ 50} This rule makes sense. As the Supreme Court observed in *Porterfield*, "The General Assembly intended a jointly agreed upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate." *Porterfield* at ¶ 25. When both parties agree that consecutive sentences are warranted, there is no need for the trial court to independently determine whether the statutory factors justify such a sentence. The parties' agreement itself obviates the need for judicial fact-finding on that question.

{¶ 51} The *Sergent* court distinguished its earlier decision in *State v. Bonnell*, 2014-Ohio-3177, which held that a trial court must make the R.C. 2929.14(C)(4) findings at the sentencing hearing and incorporate them into the sentencing entry. *Sergent* at ¶ 38-42. As the Court explained, *Bonnell* did not involve a jointly recommended sentence. Rather, in *Bonnell*, the trial court exercised its own discretion to impose consecutive sentences. By contrast, when the state and the defendant jointly propose the imposition

- 15 -

of consecutive sentences, it is the parties' agreement that drives the sentencing determination, not the judge's independent assessment. *Sergent* at ¶ 42. Because *Bonnell* is factually distinguishable, it does not control in cases involving jointly recommended sentences.

{¶ 52} We have followed *Sergent* and *Porterfield*. In *State v. Castro*, 2022-Ohio-4327 (12th Dist.), we rejected an argument identical to Flecha's, noting that "[t]he issue raised by Castro concerning consecutive sentencing findings in a jointly recommended sentence has already been rejected by the supreme court." *Castro* at ¶ 10, citing *Sergent*, 2016-Ohio-2696, at ¶ 29. We held that where a jointly recommended sentence is accepted by the trial court, "the court is not required to make the R.C. 2929.14(C)(4) findings." *Id.*, citing *Sergent*. And in *State v. Frazier*, 2024-Ohio-2114, ¶ 19, we reaffirmed that consecutive-sentence findings are not required for jointly recommended sentences.

### 3. Application to This Case

{¶ 53} Applying these principles to the present case, we conclude that the trial court was not required to make the consecutive-sentencing findings under R.C. 2929.14(C)(4). The record is unambiguous that Flecha and the State jointly recommended a sentence that included consecutive service. At the plea hearing, the parties informed the trial court of their agreement that Flecha would serve six months in prison consecutively to the sentence he was already serving. The trial court imposed precisely the sentence the parties recommended.

{¶ 54} Flecha argues that the trial court failed to make all the required findings orally at the sentencing hearing, noting that while the court made the first two findings regarding necessity and proportionality, it did not make the third finding under R.C. 2929.14(C)(4)(a), (b), or (c). He further argues that the written findings regarding course of conduct and criminal history lack support in the record because no presentence

investigation was ordered and no comprehensive statement of facts or criminal history was presented.

{¶ 55} These arguments, while perhaps having merit in the context of a non-jointly recommended sentence, are foreclosed by *Sergent* and *Porterfield*. As the Ohio Supreme Court made clear, when consecutive sentences are jointly recommended by the parties, the trial court has no obligation to engage in the analysis required by R.C. 2929.14(C)(4). The absence of such findings, whether oral or written, does not render the sentence "unauthorized by law" for purposes of R.C. 2953.08(D)(1). Rather, Flecha's stipulation to the consecutive sentence eliminated the need for judicial fact-finding on that question entirely. *See Porterfield* at ¶ 25.

{¶ 56} Flecha's reliance on cases like *State v. Brickles*, 2021-Ohio-178 (4th Dist.), and *State v. Gwynne*, 2022-Ohio-4607, is misplaced. Those cases addressed the requirements for consecutive sentencing in contexts where the sentences were not jointly recommended by the parties. Cases like *Brickles* and *Gwynne* (and *Bonnell*), all involved circumstances where the trial court, rather than the parties' agreement, determined that consecutive sentences were appropriate.

**4. The Sentence Is Authorized by Law**

{¶ 57} Flecha's consecutive sentence is "authorized by law" within the meaning of R.C. 2953.08(D)(1). The six-month prison term falls within the statutory range for a fourth-degree felony under R.C. 2929.14(A)(4). The consecutive-service provision is permitted by R.C. 2929.14(C)(4). And because the consecutive sentence was jointly recommended by the parties, no additional findings were required. The sentence therefore comports with this mandatory sentencing provision.

{¶ 58} Because the sentence was authorized by law, was jointly recommended by Flecha and the State, and was imposed by the trial court, we lack jurisdiction to review

the consecutive-sentencing determination under R.C. 2953.08(D)(1). *See Castro* at ¶ 11 ("As a result, we have no authority to review the imposed sentence.").

{¶ 59} We acknowledge that in our review of the first assignment of error we concluded that the trial court's failure to notify Flecha orally of the consequences of violating postrelease control renders the sentence "unauthorized by law" for purposes of R.C. 2953.08(D)(1) and opens the door to appellate review of the postrelease-control issue. But the postrelease-control deficiency does not extend our jurisdiction to review the consecutive-sentencing determination. The consecutive-sentence analysis is entirely separate from the postrelease-control analysis, and the lack of proper postrelease-control notification does not transform the consecutive sentence into one that is unauthorized by law.

{¶ 60} The second assignment of error is overruled.

### III. Conclusion

{¶ 61} We have sustained that part of the first assignment of error in which Flecha claims that the trial court failed to advise him orally of the consequences of violating post-release control. We therefore reverse the trial court's judgment in part and remand this matter for the limited purpose of providing Flecha with the required oral notification. The remainder of the judgment is affirmed.

BYRNE, P.J., concurs.

PIPER, J., concurs in part and dissents in part.


**PIPER, J., concurring in part and dissenting in part.**

### Introduction

{¶ 62} I agree with my esteemed colleagues as it pertains to the resolution of

Flecha's second assignment of error. That is, pursuant to the plain language of R.C. 2953.08(D)(1), I concur that this court lacks jurisdiction to review the trial court's consecutive-sentence determination, and therefore, this court has no choice but to overrule the entirety of Flecha's second assignment of error on that basis. However, with respect to the majority's decision on Flecha's first assignment of error, I respectfully dissent.

{¶ 63} As explained more fully below, not only do I find this court lacks jurisdiction to review the trial court's consecutive-sentence determination, I also find that this court does not have jurisdiction to rule on whether a trial court commits reversible error by failing to orally advise a defendant of the consequences of violating the conditions of postrelease control at the time of the defendant's sentencing. The plain language of R.C. 2953.08(D)(1) divests this court of jurisdiction to rule on that issue. What is more, even if the plain language of R.C. 2953.08(D)(1) did not apply, which it does, I further find a Crim.R. 52 analysis would require this court to overrule Flecha's first assigned error, given his failure to establish that he suffered any resulting prejudice by the trial court's omission.

{¶ 64} Consequently, and despite much of the majority's miscomprehension of this dissent, rather than addressing the merits of either of Flecha's two assignments of error, or, as the majority does in this case, addressing one but not the other, I would apply the plain language of R.C. 2953.08(D)(1) to this case and overrule both.

## R.C. 2953.08(D)(1) Imposes a "Statutory Limit" for Appellate Review

{¶ 65} There is no dispute that R.C. 2953.08(A) grants this court subject-matter jurisdiction to hear a defendant's appeal of a felony sentence as a matter of right. *State v. Gwynne*, 2019-Ohio-4761, ¶ 9. It is only the General Assembly that may grant or divest this court of that jurisdiction. *Id.* There is equally no dispute that R.C. 2953.08(D)(1) provides a "statutory limit" on this court's jurisdiction to hear a defendant's appeal of his

or her felony sentence. *Id.* at ¶ 9, fn. 1. Specifically, as the plain language of that statute states:

> A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge.

{¶ 66} Therefore, as the majority acknowledged, appellate review of a felony sentence imposed upon a defendant is prohibited by R.C. 2953.08(D)(1) where (1) the sentence is authorized by law; (2) the parties have jointly recommended the sentence; and (3) the trial court imposes the sentence that the parties jointly recommended. Accordingly, as the Ohio Supreme Court has expressly concluded, "if the conditions under R.C. 2953.08(D)(1) are established, an appellate court lacks jurisdiction to hear the appeal." *State v. Castro*, 2022-Ohio-4327, ¶ 9 (12th Dist.), citing *State v. Noling*, 2013-Ohio-1764, ¶ 22.

### R.C. 2953.08(D)(1)'s Statutory Limit Applies to the Entirety of this Case

{¶ 67} It is undisputed that the trial court imposed the agreed-upon sentence that Flecha and the State had jointly recommended in this case, thereby satisfying the latter two requirements provided for by R.C. 2953.08(D)(1). It is only the first of the R.C. 2953.08(D)(1)'s requirements that remain in dispute. That being, whether the jointly recommended sentence imposed by the trial court upon Flecha was "authorized by law." If the sentence was *authorized* by law, the statutory limit the General Assembly placed upon this court's jurisdiction to review a jointly recommended sentence applies. This means we are divested from subject-matter jurisdiction to proceed with addressing the merits of Flecha's two assignments of error. If, on the other hand, the sentence was *unauthorized* by law, the statutory limit imposed by R.C. 2953.08(D)(1) would not apply and this court would have the authority to address the merits of Flecha's two assigned

errors.

{¶ 68} In addressing Flecha's second assignment of error, the majority properly found that, based on the plain language outlined in R.C. 2953.08(D)(1), this court lacked jurisdiction to review the trial court's consecutive-sentence determination. The majority reached this decision upon finding the consecutive nature of Flecha's sentence was *authorized* by law under R.C. 2953.08(D)(1), thereby triggering the application of the General Assembly's "statutory limit" on this court's jurisdiction to review the jointly recommended sentence. To this I agree.

{¶ 69} However, I disagree that the trial court's failure to orally advise Flecha at the time of sentencing of the consequences he faced should he violate postrelease control, rendered that portion of his sentence *unauthorized* by law under R.C. 2953.08(D)(1). The majority labels the requisite advisement of postrelease control as a "mandatory sentencing provision" and concludes that the General Assembly's limit on this court's jurisdiction to review jointly recommended sentences is inapplicable. It is for this reason that I must dissent.

**The Inadvertent Extrapolation from *Underwood***

{¶ 70} In *Underwood*, the Ohio Supreme Court determined that, even though the trial court may have imposed a jointly recommended sentence upon the defendant, appellate review of that jointly recommended sentence was not barred by R.C. 2953.08(D)(1) because the jointly recommended sentence prejudiced the defendant by violating the defendant's fundamental right against double jeopardy. However, since its release, the *Underwood* decision has been inadvertently extended to issues not otherwise addressed by the Ohio Supreme Court within that opinion. The extrapolation flows from a phrase in which the Ohio Supreme Court *commented* that for a jointly recommended sentence to be "authorized by law" within the meaning of R.C. 2953.08(D)(1), the

- 21 -

sentence must "comport with all mandatory sentencing provisions." *Id.*, 2010-Ohio-1, at ¶ 20.

{¶ 71} There is a strong argument that this comment is dictum, given that it was unnecessary to the underlying decision being rendered in the case. *See Black's Law Dictionary* 1240 (10th Ed.2014) (defining "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential"). Nevertheless, regardless of whether this comment was dictum or not, it has led many appellate courts to treat virtually all requisite sentencing notifications and advisories that use the word "shall" as "mandatory sentencing provisions" which must be provided to a defendant for the sentence to be "authorized by law" under R.C. 2953.08(D)(1). This has also led courts, including this one, to find that a trial court's failure to provide the defendant with such notifications and advisements constitutes an error that requires automatic reversal and remand to the trial court, even in the context of a jointly recommended sentence.

{¶ 72} These reversals occurred irrespective of whether the defendant could establish that the error affected the defendant's sentence or that there was any resulting prejudice to the defendant arising from the trial court's failure under Crim.R. 52(A) or (B). That is, there was no Crim.R. 52 analysis of whether any error was merely harmless or, where the error had gone unobjected to, plain error warranting reversal and remand. Although the error had no effect on the parties' agreed-upon sentence, a limited reversal was nevertheless granted to allow the trial court to provide the defendant with the notification or advisory that had previously been missing. This is a misguided extrapolation of the Ohio Supreme Court's opinion in *Underwood*. In *Underwood,* the "mandatory sentencing provision" referenced was merger, a statutory, enacted constitutional protection that affected the sentence.

{¶ 73} The word "shall" is generally construed to mean mandatory. *State v. Cecos International, Inc.*, 1987 Ohio App. LEXIS 7126, *3 (12th Dist. May 26, 1987). However, not every legislative use of the word "shall" means it is mandatory. *See State v. Smith*, 2012-Ohio-781, ¶ 9. While the word "shall" may often mean mandatory with respect to substantive matters (pertaining to the substance of an act), the word "shall" is also used in a directory or instructional capacity, particularly when it concerns timing or procedure. *See In re K.M.*, 2020-Ohio-995, ¶ 19, quoting *In re Davis*, 1999-Ohio-419, ¶ 10 ("'A statute which provides a time for the performance of an official duty will be construed as directory so far as the time for performance is concerned especially where the statute fixes the time simply for convenience or orderly procedure.'").

{¶ 74} Moreover, just as not every legislative use of the word "shall" means mandatory, not every error involving the legislative use of the word "shall" requires automatic reversal, either. For instance, in *State v. Perry,* the Ohio Supreme Court considered the effect of a trial court's violation of a statute that sets forth multiple duties it "shall" perform in jury trials. *Id.,* 2004-Ohio-297. Upon reviewing the statute and concluding that the trial court's failure to adhere to its statutory duties was error, the Ohio Supreme Court determined that, despite the legislative use of the word "shall" within the statute violated, it was not a structural error requiring automatic reversal. The Ohio Supreme Court instead determined that further analysis by the appellate court was necessary to determine whether the trial court's failure constituted plain error under Crim.R. 52(B) and, if not, to review the appellant's remaining assignments of error.

**Analysis and Application to this Case**

{¶ 75} Turning then to the facts of this case, the legislative use of the word "shall" in R.C. 2929.19(B)(2)(f) placed a statutory directive for the trial court to notify Flecha of

- 23 -

postrelease control at the time of his sentencing. However, the directive was not substantive in nature. The substantive nature of postrelease control is governed by R.C. 2967.28. The statutory duty imposed on the trial court by R.C. 2929.19(B)(2)(f) is procedural. That is, the duty to provide notice of the consequences for potential violations of postrelease control at the time of defendant's sentencing does no more than establish a convenient and orderly procedure for the trial court to fulfill a statutory responsibility to emphasize the need for good behavior, and consequences for bad behavior, upon release from prison.

{¶ 76} Consequently, unlike my colleagues in the majority, I do not believe that simply because a trial court has a statutory obligation at the time of sentencing, directed by the General Assembly, to provide a defendant with notice of the consequences after being released from prison for violating the conditions of postrelease control that it makes R.C. 2929.19(B)(2)(f) tantamount to a "mandatory sentencing provision" as the phrase was used by the Ohio Supreme Court in *Underwood*. This is because, in *Underwood*, the phrase "mandatory sentencing provision" was used in the context of merger, a clear mandatory sentencing provision given its effect on a defendant's fundamental constitutional right to be free from double jeopardy.

{¶ 77} A deficiency in the timely notice of postrelease control is neither violative of a fundamental right nor does it result in a constitutional defect in the proceeding. The trial court's error is instead a procedural, not substantive, rule violation. Therefore, even when the trial court fails to provide a defendant with notice of postrelease control at sentencing, the jointly recommended sentence being imposed upon the defendant is still "authorized by law" under R.C. 2953.08(D)(1). No violation of a "mandatory sentencing provision" involving a fundamental constitutional right as occurred in *Underwood* occurred in Flecha's sentencing.

{¶ 78} Furthermore, even if a failure of notification at sentencing rendered the jointly recommended sentence unauthorized by law under R.C. 2953.08(D)(1), such an omission does not constitute a structural error requiring automatic reversal. "A structural error is a violation of the basic constitutional guarantees that define the framework of a criminal trial; it is a fundamental *constitutional* defect in the proceeding that is presumptively prejudicial and not susceptible to harmless-error review." (Emphasis in original.) *State v. Jones*, 2020-Ohio-3051, ¶ 2. Therefore, because a trial court's failure to notify a defendant of postrelease control at sentencing is only a violation of a procedural provision rather than a fundamental constitutional defect in the proceedings an appellate court must engage in a Crim.R. 52 analysis to determine whether the error was harmless or, where the error went unobjected to, a plain error that warranted reversal and remand to the trial court.

{¶ 79} An appellate court's failure to engage in such analysis is contrary to the notion that, outside of structural error, there is no category of error that allows for reversal without prejudice. This holds true regardless of whether an objection to the error was made in the trial court. *See State v. West*, 2022-Ohio-1556, ¶ 2 (reiterating the Ohio Supreme Court's position rejecting the "notion that there is any category of forfeited error that is not subject to the plain error rule's requirement of prejudicial effect on the outcome"). Yet, in this case, the majority performs no Crim.R. 52 analysis under either section (A) or (B). This is problematic because the record firmly establishes that Flecha cannot, in good conscience, claim he suffered any prejudice from the trial court's failure to orally notify him at sentencing of the consequences for violating the conditions of his postrelease control after being released from prison.

{¶ 80} A simple review of the record shows that Flecha engaged the trial court in a discussion of postrelease control. Flecha led the trial court judge to believe that he knew

about postrelease control and the consequences that he could face for violating the conditions of his postrelease control, given that he was already subject to postrelease control in another case. The trial court was more than willing to continue the discussion. However, not only did Flecha facilitate a shortened dialogue, but he also never objected to the trial court's failure to orally notify him of the consequences for violating postrelease control. Further demonstrating a lack of prejudice is the fact that Flecha received the pertinent postrelease control notifications in writing as part of the trial court's sentencing entry. While written notifications in an entry do not satisfy the procedural provision for oral notification at sentencing, the entry certainly may be considered in determining if the face of the record can demonstrate prejudice.

{¶ 81} Given the foregoing, rather than opting for an automatic reversal, had the majority conducted a Crim.R. 52 analysis in this case, this court could have put the case to rest where it belongs, given Flecha's failure to establish any resulting prejudice from the trial court's failure to orally notify him at sentencing of the consequences for violating the conditions of his postrelease control upon his release from prison.

## Two Remaining Concerns

{¶ 82} Preliminarily, I do not retreat from the initial reason for this dissent; if a "mandatory sentencing provision" has not been violated, the agreed sentence imposed upon the defendant is one that is "authorized by law," and there is no authority for appellate review pursuant to R.C. 2953.08(D)(1). *See State v. Sergent*, 2016-Ohio-2696, ¶ 26. There are two remaining concerns with the majority opinion, however. Those being, (1) can violating a mandatory sentencing provision avoid, as the majority does in this case, a "total resentencing" pursuant to the Ohio Supreme Court's decision in *Underwood*, and (2) can the analysis for violating a mandatory sentencing provision avoid, as the majority does in this case, the application of Crim.R. 52? The answer to both

questions is "no."

*Resentencing*

{¶ 83} There is no dispute that postrelease control was imposed upon Flecha in this case. The claimed error is that Flecha was not informed of the potential consequences of violating the conditions of his postrelease control once he was released from prison. My colleagues reverse and remand for a very limited, partial resentencing. This runs afoul of *Underwood* and skirts the significance of the reasons for reversal and remand.

{¶ 84} To require reversal and remand, the sentencing error must be of import— i.e., one that affects or fundamentally undermines the sentence agreed to by the parties as appropriate and imposed by the trial court. In other words, the error is not any error at sentencing, but an error that violates a mandatory sentencing provision. If not complying with a mandatory sentencing provision, such a sentence is "subject to total resentencing." *Underwood*, ¶ 20, citing *State v. Bezak,* 2007-Ohio-3250, ¶ 16 (where the absence of imposing postrelease control voided the sentence and required a completely new, de novo sentencing). There is no binding authority, other than our own misinformed precedent, that requires a reversal and remand to notify a defendant of something the defendant's appeal demonstrates that he already knows.

*Criminal Rule 52*

{¶ 85} Assuming there is authority for appellate review in this matter, the Ohio Supreme Court's decision in *Underwood* requires that a Crim.R. 52 analysis take place. *Id.*, 2010-Ohio-1, at ¶ 31-32. The majority's refusal to undergo a Crim.R. 52 analysis in this case creates exactly the "hybrid type" of plain error that was rejected by the Court in *State v. Rogers*, 2015-Ohio-2459, ¶ 22-23. In that case, the Ohio Supreme Court, relying on its earlier holding in *State v. Perry*, 2004-Ohio-297, specifically "rejected the notion

that there is any category of forfeited error that is not subject to the plain error rule's requirement of prejudicial effect on the outcome." *Rogers* at ¶ 24, citing *Perry* at ¶ 23.

{¶ 86} In so doing, Chief Justice Thomas J. Moyer, writing for the Court in *Perry*, cautioned that "any unwarranted expansion of Crim.R. 52(B) would skew the Rule's careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." (Cleaned up.) *Perry* at ¶ 20. Chief Justice Moyer further explained that "our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court—where, in many cases, such errors can be easily corrected." *Id*. at ¶ 23. The majority's reversal and remand to advise Flecha of something that his appeal demonstrates he already knows does nothing to foster "judicial economy" and is something unsupported by a Crim.R.52 analysis.

## Conclusion

{¶ 87} Avoiding appellate review by agreement is to everyone's advantage. By agreeing to forgo appellate review in exchange for a jointly recommended sentence, a defendant receives a reduced sentence, and both the defendant and the State avoid the uncertainty of trial and the time and expense of proceeding through trial and appeal. Efficiency is served, not just for the parties, but also for the judiciary at both the common pleas and appellate levels. Therefore, while I respect my colleagues' perspective, I concur in the majority's resolution of Flecha's second assignment of error, but dissent with respect to the majority's resolution of Flecha's first assignment of error, for I believe this court lacks jurisdiction to review either of Flecha's two assigned errors pursuant to R.C. 2953.08(D)(1). And, even if this court did not lack jurisdiction, a Crim.R. 52 analysis of Flecha's first assigned error would indisputably result in it being overruled, given his

- 28 -

inability to establish any resulting prejudice from the trial court's failure to notify him at sentencing of the consequences for violating the conditions of his postrelease control.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, reversed in part, and this cause is remanded for resentencing according to law and consistent with the above Opinion. In all other respects, the judgment of the trial court is affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 50% to appellant and 50% to appellee.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Mike Powell, Judge